873 P.2d 260

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Vance WYROSTEK, Defendant–Appellee.**

No. 20696.

Supreme Court of New Mexico.

April 5, 1994.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Gary Mitchell, Ruidoso, for defendant-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for amicus curiae NM Public Defender.

## OPINION

BACA, Justice.

The State appeals from the district court's pretrial order finding and concluding that a sentence of death imposed upon defendant-appellee, Vance Wyrostek, would be excessive and disproportionate when compared to the penalties imposed in similar first-degree murder cases. The State sought an interlocutory appeal of the district court's order. The Court of Appeals granted the State's application for interlocutory appeal and certified this case to our Court pursuant to NMSA 1978, Section 34-5-14(C) (Repl. Pamp.1990) (granting the Supreme Court appellate jurisdiction if the Court of Appeals certifies that an undecided issue before it involves: "(1) a significant question of law under the constitution of New Mexico or the United States; or (2) an issue of substantial public interest that should be determined by the supreme court"). We address a single issue on appeal: Whether the district court has the authority to determine whether the death penalty would be excessive or disproportionate in a given case.[1] We hold that this Court is the sole arbiter of whether a death sentence is excessive or disproportionate. Consequently, the district court erred by making a pretrial ruling on death sentence proportionality. We reverse and remand this case for trial.

## I.

The following facts were alleged by the State. On the evening of February 23, 1991, Defendant was having a party at his house located near Los Lunas, New Mexico. After the party had gone on for some time, Francisco Gomez, who was heavily intoxicated, made several sexual comments about Defendant's sister. Defendant asked Gomez to leave the party. When Gomez stood up, Defendant repeatedly struck him with a beer bottle, while Defendant's brother hit Gomez with his fists. Gomez, rendered unconscious by the attack, was carried outside and lifted into the back of a pickup truck by Defendant, his brother, and Larry Lyannas. Gomez, still unconscious, was driven away from the house and was dumped into a ditch. Defendant, his brother, and Lyannas returned to the house and began cleaning up the area of the house where Gomez had been attacked.

Later, Defendant drove himself and Lyannas to a convenience store. They filled a

---

1. Briefing was originally requested on the issue of whether the district court can make a pretrial determination of whether the evidence of aggravated circumstances is sufficient to submit the death penalty issue to the jury. Our review of the order appealed from by the State reveals that the district court only ruled on death sentence proportionality. The district court did not make a pretrial determination of whether the evidence of aggravating circumstances was legally sufficient to warrant a death penalty trial. Because we do not give advisory opinions, we decline to address the issue of pretrial determination of evidence of aggravating circumstances in the context of this case. *See State v. Clark*, 108 N.M. 288, 311, 772 P.2d 322, 345 (declining to review issue not raised on appeal), *cert. denied*, 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 664, 789 P.2d 603, 612 (1990). For resolution of this issue in another case, we

container with gasoline and returned to the ditch where Gomez had been abandoned. Lyannas poured some of the gasoline on Gomez as he lay unconscious. Defendant dipped a stick in the remaining gasoline, lit it, and threw the burning stick on Gomez. Gomez died as a result of thermal burns to his body.

A criminal complaint was filed against Defendant on February 25, 1991. The complaint charged Defendant with an open count of murder and with tampering with evidence. On March 7, 1991, Defendant was indicted by a grand jury for first-degree murder, conspiracy to commit first-degree murder, aggravated battery, and tampering with evidence. In order to seek the death penalty against Defendant, the indictment charged that Gomez had been "a witness to a crime or any person likely to become a witness to a crime, [and was killed] for the purpose of preventing report of the crime or testimony in any criminal proceeding."[2] See NMSA 1978, § 31–20A–5(G) (Repl.Pamp.1990) (listing the murder of a witness to a crime as one aggravating circumstance to be considered during capital sentencing). Lyannas pleaded guilty to first-degree murder and was given a life sentence.

Prior to trial, Defendant filed a motion for an order prohibiting the State from seeking the death penalty. Defendant argued that under NMSA 1978, Section 31–20A–4(C)(4) (Repl.Pamp.1990) (mandating proportionality review in death penalty cases), the imposition of the death penalty would be excessive or disproportionate to the penalty imposed in similar first-degree murder cases.[3] Defendant contended that Section 31–20A–4, while requiring the Supreme Court to review the proportionality of a death sentence, does not prohibit the district court from ruling that the death penalty would be disproportionate

in a given case. Defendant asserted that under State v. Clark, 108 N.M. 288, 311, 772 P.2d 322, 345, cert. denied, 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989), overruled on other grounds by State v. Henderson, 109 N.M. 655, 664, 789 P.2d 603, 612 (1990), the issue of proportionality must be ruled on at the district court level. Defendant claimed that a death sentence would be disproportionate in this case because Lyannas, a codefendant, was permitted to plead guilty and receive a life sentence. Finally, Defendant maintained that trying his case as a nondeath penalty capital murder case would save the taxpayers' money. In response, the State argued that under Section 31–20A–4, the proportionality of a death sentence had to be decided by this Court, and that Clark did not require the district court to make the proportionality determination.

In a written order filed on June 22, 1992, the district court concluded that Section 31–20A–4 did not prohibit a district court from determining whether a sentence of death in a capital murder case would be disproportionate. The court concluded that under Clark, a district court has the discretion to decide the issue of proportionality. The district court found and concluded that a sentence of death imposed upon Defendant would be excessive or disproportionate to the penalty imposed in similar cases. The State sought interlocutory appeal of this issue with the Court of Appeals. The Court of Appeals certified this matter to our Court for review.

## II.

We address one issue on appeal: Whether the district court has the authority to conduct proportionality review of death sentences.[4] The State argues that the district court is not authorized to determine

---

direct the parties to State v. Ogden, N.M., 1994 WL 111642 (March 14, 1994).

2. The State contended that Gomez had been a witness to his own beating. To support its argument that Gomez was killed to prevent the report of his beating, the State alleged that Wyrostek told Lyannas that he intended to "cover their tracks" before returning to the ditch and setting Gomez on fire.

3. Wyrostek filed the affidavit of Susan Gibbs, an appellate public defender and recognized expert

on the subject of proportionality of death sentences. Gibbs's affidavit contained factual summaries of New Mexico first degree murder cases and, in essence, contended that a penalty of death imposed upon Wyrostek would be disproportionate when compared to these cases.

4. Death sentence proportionality review is not constitutionally required under the Eighth Amendment. See Pulley v. Harris, 465 U.S. 37, 50–51, 104 S.Ct. 871, 879–80, 79 L.Ed.2d 29 (1984).

whether an eventual sentence of death in a given case would be disproportionate. Defendant and the New Mexico Public Defender Department ("Amicus"), filing an Amicus brief on Defendant's behalf, contend that the district court generally has the power to determine the proportionality of a death sentence, and can rule on proportionality prior to trial. Defendant and Amicus assert that their argument is supported by the New Mexico Constitution, the statutes governing capital sentencing, our opinion in *Clark*, and various policy considerations.

■ We agree with Defendant that the issue raised in this case, a question of first impression in New Mexico, is one of constitutional import. Under Article VI, Section 13 of the New Mexico Constitution, "the district court is one of general jurisdiction." *Trujillo v. State*, 79 N.M. 618, 619, 447·P.2d 279, 280 (1968). Under the Constitution's broad grant of general jurisdiction, the district courts have exclusive jurisdiction to try felony cases. *State v. Garcia*, 93 N.M. 51, 53, 596 P.2d 264, 266 (1979). The district court has "appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts." N.M. Const. art. VI, § 13. In contrast, the New Mexico Constitution grants this Court exclusive appellate jurisdiction over district court judgments imposing a sentence of death or life imprisonment. *See* N.M. Const. art. VI, § 2. The issue is whether the district court is prohibited from making proportionality determinations in light of the constitutional provision that commits to this Court the exclusive jurisdiction over death penalty appeals. If not, the proportionality determination presumably falls within the district court's general jurisdiction, and can be decided during the trial of capital murder cases. The imposition and review of capital punishment in this State is controlled by the Capital Felony Sentencing Act, NMSA 1978, Sections 31–20A–1 to –6 (Repl.Pamp.1990 & Cum.Supp.1993) (the "Act"). Hence, the issue must be answered by construing the Act in accordance with the rules of statutory interpretation.

A.

■ In construing the Act, our primary goal is to determine and give effect to the intention of the Legislature. *Arnold v. State*, 94 N.M. 381, 383, 610 P.2d 1210, 1212 (1980). Legislative intent is ascertained primarily "from the language used in the Act or statute as a whole." *Id.* When construing a statute, we give the statute effect as written. *Fort v. Neal*, 79 N.M. 479, 481, 444 P.2d 990, 992 (1968).

■ Examination of the Act leads us to conclude that this Court alone determines whether a death sentence is disproportionate. The Act's single reference to proportionality review is found in Section 31–20A–4:

**31–20A–4. Review of judgment and sentence.**

A. *The judgment of conviction and sentence of death shall be automatically reviewed by the supreme court of the state of New Mexico.*

B. In addition to the other matters on appeal, *the supreme court shall rule on the validity of the death sentence.*

C. *The death penalty shall not be imposed if:*

(1) the evidence does not support the finding of a statutory aggravating circumstance;

(2) the evidence supports a finding that the mitigating circumstances outweigh the aggravating circumstances;

(3) the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; or

(4) *the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.*

(Emphasis added). Under the plain language of Section 31–20A–4, proportionality review is conducted by this Court on appeal, after a conviction and death sentence is handed down by the district court.

Although the Act's sole provision mandating proportionality review requires the inquiry to be made after a death sentence has issued, Defendant and Amicus argue that the district court can determine death sentence

proportionality prior to trial, or at least at some point during the trial of a capital defendant. We disagree.

■ We reject Defendant's assertion that the district court can determine the proportionality of a death sentence prior to trial. The determination of whether a death sentence is excessive or disproportionate requires review of the facts in the trial record pertaining to the crime, including evidence of aggravation and mitigation. *See State v. Garcia*, 99 N.M. 771, 780, 664 P.2d 969, 978, *cert. denied*, 462 U.S. 1112, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). Evidence of aggravation and mitigation is not fully developed until after conviction when such evidence is presented during the sentencing phase of the capital murder trial. *See* § 31–20A–1(A)–(C) (Repl.Pamp.1990). Thus, the determination of death sentence proportionality could happen no earlier than after the evidence of aggravating and mitigating circumstances has been presented at the sentencing hearing.

■ Although conceding that the district court has no discretion to hold a death sentence disproportionate after the jury has sentenced a defendant to death, *see* § 31–20A–3 (Repl.Pamp.1990) (mandating that the trial court sentence the defendant to death after a death sentence is unanimously specified by the jury); *State v. Guzman*, 102 N.M. 558, 559, 698 P.2d 428, 429 (1985) (holding that the trial court has no discretion to modify a death sentence under Section 31–20A–3), Defendant and Amicus argue that the district court can hold the death sentence disproportionate after evidence of aggravating and mitigating circumstances has been presented at the sentencing hearing, but before the defendant is sentenced. Amicus asserts that the district court can then direct a verdict in the defendant's favor on whether or not the defendant should receive a death sentence. We find this argument to be without merit. Following the presentation of additional evidence, instructions, and arguments in a jury sentencing proceeding, the jury is given the responsibility of determining the punishment to be imposed. *See* Section 31–20A–1(D). At this point in the sentencing process, the district court has no discretion to take the

sentencing determination from the jury. *Cf. State v. Mares*, 92 N.M. 687, 689, 594 P.2d 347, 349 (Ct.App.), (deciding that the trial court erred by deciding a question that was for the jury to decide), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979).

■ We also note that the proportionality of a death sentence is not properly considered by the district court in a nonjury sentencing proceeding. Unlike one state, where the trial judge is required to consider proportionality during sentencing, *see* Neb.Rev. Stat. § 29–2522 (Reissue Vol. 1989), the Act does not make death sentence proportionality a factor to be considered by the district court when sentencing a defendant convicted of a capital felony. *See* Section 31–20A–2(B) (stating that the judge shall determine the defendant's sentence after weighing the aggravating and mitigating circumstances against each other and considering the defendant and the crime).

■ We conclude that the Legislature intended this Court, rather than the district court, to determine death sentence proportionality. *Cf. State v. Payne*, 327 N.C. 194, 394 S.E.2d 158, 163 (1990) (holding that Supreme Court is exclusive judge of death sentence proportionality in a jurisdiction where the trial court must impose death sentence when the jury unanimously recommends death), *cert. denied*, 498 U.S. 1092, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703, 716 n. 3 (1983) (noting that the trial judge must impose the death sentence when the jury returns a verdict of death and that consequently, the Supreme Court, not the trial judge, conducts proportionality review). Under the Act, the district court and this Court play two distinct roles in the capital sentencing process. The jury (or in nonjury cases, the district court judge) determines whether a defendant convicted of a capital felony should be sentenced to death. This Court, on appeal, reviews the death sentence under Section 31–20A–4, to determine whether the sentence can legally be imposed. We hold that the Act does not permit the determination of

death sentence proportionality at any stage of a capital murder trial.[5]

### B.

 Amicus contends that district court proportionality review is supported by the Act's provisions on aggravating and mitigating circumstances. Amicus argues that proportionality should first be determined by the district court, then reviewed on appeal by this Court, in much the same way that aggravating and mitigating circumstances are considered at trial and later reviewed on appeal. Defendant raises a similar argument that the State must present evidence to the district court that a death sentence would be proportionate, subject to later Supreme Court review. The Act does not support these arguments.

The Act contains specific provisions that require consideration of aggravating and mitigating circumstances during the sentencing phase of capital murder trial. *See* Section 31–20A–2 (Repl.Pamp.1990) (determination of sentence); Section 31–20A–3 (sentencing of defendant); *see also* Section 31–20A–5 (aggravating circumstances defined); Section 31–20A–6 (Repl.Pamp.1990) (mitigating circumstances defined). On appeal, this Court is directed to review the evidence of aggravating and mitigating circumstances presented at trial, and determine whether the sentence of death should not be imposed. *See* Section 31–20A–4(C)(1) (the death penalty will not be imposed if "the evidence does not support the finding of a statutory aggravating circumstance"); Section 31–20A–4(C)(2) (the death penalty will not be imposed if "the evidence

supports a finding that the mitigating circumstances outweigh the aggravating circumstances"). No comparable statutory scheme exists for proportionality review. The Act neither directs the district court to consider proportionality, nor requires that this Court review evidence of disproportionality presented at trial. *See* Section 31–20A–4(C)(4) (requiring the determination of whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases," rather than a review of evidence relating to proportionality). We do not read language into the Act that is not there. *See State v. Alderette*, 111 N.M. 297, 299, 804 P.2d 1116, 1118 (Ct.App.1990). Accordingly, we decline to adopt an interpretation of the Act that requires presentation of evidence of proportionality at trial, and subsequent review of a trial court proportionality determination on appeal.

### C.

 Defendant and Amicus suggest that in the absence of a district court proportionality determination, proportionality review would require this Court to find facts or take evidence on proportionality, or conduct a de novo review. While it would be improper for this Court to usurp the province of the district court by determining questions of fact on appeal, *see Watson Land Co. v. Lucero*, 85 N.M. 776, 778, 517 P.2d 1302, 1304 (1974), proportionality review does not require this Court to conduct independent fact-finding. The determination of whether a death sentence is disproportionate or excessive is a question of law.[6] *See State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110, 129 (1984)

---

**5.** Unlike New Mexico, some jurisdictions give the trial court the discretion to modify the jury's sentence recommendation. *See, e.g.,* Ala.Code § 13A–5–47(e) (Repl.Vol.1982) (discussing sentencing by the trial court and declaring that the jury's recommendation is not binding on the court). While the law is far from clear, trial courts in some of these jurisdictions may not be prohibited from determining the proportionality of a death sentence as part of the capital sentencing process. *See, e.g., McClellan v. Commonwealth*, 715 S.W.2d 464, 473 (Ky.1986) (implying that the trial court, in exercising its sentencing discretion, may be able to conduct proportionality review), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987).

**6.** Because the proportionality of a death sentence is a question of law, and because death sentence proportionality is clearly a question for this Court, we reject any suggestion by Defendant or Amicus that the sentencing jury should perform the legal analysis of proportionality review when determining the sentence of a Defendant convicted of a capital felony. We do not, however, determine whether evidence of the sentence given to a defendant's codefendant or his accessory would be admissible as evidence of mitigation. This appeal does not reach the issue of whether the proportional treatment of codefendants is a fact that can be presented to the jury in sentencing as a mitigating circumstance.

(Exum, J., dissenting), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1877, 85 L.Ed.2d 169 (1985); *State v. Lawson,* 310 N.C. 632, 314 S.E.2d 493, 502 (1984), *cert. denied,* 471 U.S. 1120, 105 S.Ct. 2368, 86 L.Ed.2d 267 (1985); *Jackson,* 305 S.E.2d at 717. When determining proportionality, we "review the record and compare the facts of the offense and all other evidence presented by way of aggravation or mitigation to determine whether the sentence is excessive or disproportionate" when compared to "New Mexico cases in which a defendant has been convicted of capital murder under the same aggravating circumstance(s)." *Garcia,* 99 N.M. at 780, 664 P.2d at 978 (emphasis omitted). Thus, at the time proportionality review is conducted by this Court, the relevant factual findings have been made by the trial court and preserved in the record. The Act neither contemplates nor requires this Court to make factual findings, hold an evidentiary hearing, or conduct a de novo review when determining whether a death sentence is disproportionate. *Cf. Lawson,* 314 S.E.2d at 502 (deciding, under a similar proportionality statute, that the statute did not require the Supreme Court to make factual findings when conducting death sentence proportionality review).

### D.

 Defendant maintains that because Section 31–20A–4(C) is mandatory—stating that "[t]he death penalty shall not be imposed if ... the sentence of death is excessive or disproportionate"—the district court must follow the law and rule on proportionality. Amicus asserts that Section 31–20A–4(C) is not directed at a specific state actor. Amicus argues that denying the district court the right to rule on proportionality violates the general principle that all state statutes must be followed by all citizens of the state. These arguments overlook the fact that Section 31–20A–4, requiring Supreme Court review of judgment of conviction and sentence

of death, is directed to this Court, not the district court or all citizens of the state. *See* § 31–20A–4(A). While a trial court has the inherent authority "to control and manage [trial] proceedings and preserve the integrity of the trial process," *State v. Parsons,* 781 P.2d 1275, 1282 (Ut.1989), this authority does not include performing appellate functions assigned by statute to this Court.

### E.

Defendant asserts that we held in *Clark* and *Garcia* that proportionality review is waived on appeal unless it is raised at the district court level. Defendant reasons that if the proportionality of a death sentence must be raised at trial to be preserved on appeal, the district court has the authority to decide the issue. The district court found these arguments compelling, and concluded that it had the discretion under *Clark* to determine whether a death sentence imposed upon Defendant would be disproportionate. Defendant's argument misinterprets our holdings in *Clark* and *Garcia.*

 In *Garcia,* we adopted guidelines for conducting proportionality review under Section 31–20A–4(C)(4). The first guideline was that "[w]e will review [the proportionality] issue only when *raised on appeal.*" 99 N.M. at 780, 664 P.2d at 978 (emphasis added). In *Clark,* we declined to address the proportionality of Clark's death sentence because he argued on appeal that the *Garcia* guidelines were unduly restrictive, rather than arguing that his sentence was disproportionate and referring this Court to similar New Mexico cases for comparison.[7] *Clark,* 108 N.M. at 311, 772 P.2d at 345. In refusing to address proportionality, we referred to *Garcia* and stated that "[w]e will ... review this issue only when raised." *Id.* We noted that Clark did "not allege, or make any showing, that his sentence would be disproportionate if

---

7. Clark argued that the record afforded no basis for determining whether his death sentence was excessive or disproportionate because of fact-finding errors made by the trial court. Clark also contended that the *Garcia* guidelines should be broadened to include all cases "in which the death penalty could have been sought but was not, as well as cases in which the death penalty

was sought but which ended either in a plea of guilty to a non-capital offense or with the jury's failure to find the existence of the alleged statutory aggravating circumstance." *Clark,* 108 N.M. at 311, 772 P.2d at 345. Clark did not assert, either in his brief-in-chief or reply brief, that his sentence was disproportionate under this new standard or under the *Garcia* standards.

compared to [similar] cases." *Id.* By stating that the proportionality issue is addressed "only when raised," and by noting that Clark did not allege or make a showing of sentence disproportionality, we did not, as Defendant claims, create a new rule that proportionality must be raised in the district court in order for the issue to be addressed on appeal. We merely applied the first *Garcia* standard—that proportionality is reviewed only when raised on appeal—and refused to address the proportionality of Clark's death sentence because he failed to properly raise the issue on appeal.

### F.

Defendant and Amicus contend that policy considerations justify trial court proportionality review. Defendant contends that pretrial proportionality review would eliminate the unjustifiable expense and delay of trying a death penalty case that is clearly disproportionate. In addition, Defendant argues that if the district court is prohibited from making pretrial rulings on proportionality, the prosecutor can seek the death penalty in a clearly disproportionate case, obtain a conviction-prone jury, eliminate jurors on racial and religious grounds,[8] and use the threat of a death sentence for leverage in plea bargaining. Amicus asserts that the district court must be able to stop the prosecution of a disproportionate case to enforce the mandate that "the death penalty shall not be imposed" if the sentence is "excessive or disproportionate." Section 31–20A–4(C). In essence, these last two arguments suggest that trial court proportionality review should be used pretrial, to prevent prosecutorial misconduct.

Defendant fails to allege that any of the claimed acts of prosecutorial misconduct occurred in this case. In the instant case, Defendant makes no allegations that the prosecutor sought a plea bargain in an improper manner. No improprieties in jury selection took place because the jury was never impanelled. Hence, these issues are not presented for consideration. *State ex rel.*

*N.M. Press Ass'n v. Kaufman,* 98 N.M. 261, 266, 648 P.2d 300, 305 (1982) (holding that "[i]t is not a function of this Court to give opinions on merely abstract or theoretical matters, but to settle actual controversies affecting the rights of the parties").

Regardless, we agree with Defendant that capital felony prosecutions and sentencing require extra judicial resources and should not be undertaken unless warranted. *State v. Ogden,* N.M., 1994 WL 111642 (March 14, 1994). We have established a pretrial procedure for evaluating aggravating circumstances, and this procedure "will conserve judicial resources and ensure fairer trials for capital defendants." *Id.* Proportionality review, however, is not an appropriate device to determine before trial whether the State may fairly seek the death penalty against a particular defendant. Rather than being concerned with the fairness of the trial process, proportionality review is a post-sentence inquiry, undertaken to identify disparities in capital sentencing and to prevent the death penalty from being administered in an arbitrary, capricious, or freakish manner. *See generally Pulley v. Harris,* 465 U.S. 37, 45, 104 S.Ct. 871, 876–77, 79 L.Ed.2d 29 (1984) (noting that comparative proportionality review is "considered an additional safeguard against arbitrary or capricious sentencing"); *Tichnell v. State,* 297 Md. 432, 468 A.2d 1, 28 (1983) (Davidson, J., dissenting) (noting that "proportionality review is designed to effectuate the consistent and fair application of the death penalty"), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984); *State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706, 733 (1986) (per curiam) (noting that the expressed purpose of proportionality review "is to ensure that the death penalty should be applied uniformly and not arbitrarily"), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987); *State v. Benn,* 120 Wash.2d 631, 845 P.2d 289, 325 (1993) (en banc) (Durham, J., concurring) (noting cases that state that proportionality review serves to prevent the wanton and freakish imposition of the death penalty),

---

**8.** While neither citing statistical evidence nor explaining how the issue is relevant to his case, Defendant generally contends that Hispanic Catholics comprise the largest percentage of the prospective jurors who are eliminated from juries for opposing the death penalty.

*cert. denied,* —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993); David C. Baldus et al., *Arbitrariness and Discrimination in the Administration of the Death Penalty: A Challenge to State Supreme Courts,* 15 Stetson L.Rev. 133, 136–37 (1986) (suggesting that proportionality review furthers notions of evenhanded justice by identifying sentencing disparities and preventing the death penalty from being administered in a random, wanton, or freakish manner). We hold that proportionality review, as a safeguard against the random imposition of the death penalty, is not a device to be used pretrial to ensure the fairness of the trial process.

Finally, we note that the aforementioned purpose of proportionality review is best achieved when "a court of statewide jurisdiction ... conduct[s] comparisons between death sentences imposed by different judges or juries within the State." *Pulley,* 465 U.S. at 70–71, 104 S.Ct. at 890 (Brennan, J., dissenting). When a single court with statewide authority reviews all capital sentences, "it accumulates a view of what is occurring under a state's capital sentencing system and may detect and correct deviant sentencing." Gary Goodpaster, *Judicial Review of Death Sentences,* 74 The Journal of Criminal Law & Criminology 786, 807 (1983). District court proportionality review would require separate courts around the State to make independent determinations. These ad-hoc trial court proportionality determinations would inevitably be at variance with one another and could not possibly foster the consistent administration of capital punishment as effectively as when proportionality determinations are made by a single court having statewide authority. This Court, because of its statewide jurisdiction, is in the best position to advance the purposes of proportionality review and assure consistent, fair, and rational administration of the death penalty. *See Proffitt v. Florida,* 428 U.S. 242, 259–60, 96 S.Ct. 2960, 2969–70, 49 L.Ed.2d 913 (1976) (noting that in reviewing death sentences, the Florida Supreme Court "because of its statewide jurisdiction, can assure consistency, fairness, and rationality in the evenhanded operation of the state law").

## G.

▮ Defendant asserts that prohibiting the district court from ruling on proportionality perpetuates an equal protection violation, and argues that the proportionality review guidelines articulated in *Garcia* should be broadened. Because Defendant asserts no facts that indicate his equal protection rights are being violated, these issues are not properly presented for review and will not be addressed on appeal. *See Lawson,* 314 S.E.2d at 500–01 (determining that the defendant's equal protection arguments were without merit when the defendant failed to show that the prosecutor sought the death penalty based on "unjustifiable standards like 'race, religion, or other arbitrary classifications' "). Review of the *Garcia* guidelines is inappropriate in this case because the guidelines are applied when this Court reviews the proportionality of a death sentence. At the present time, Defendant has neither been convicted of a crime nor sentenced to death. Thus, any ruling on the *Garcia* guidelines would be advisory in nature. *See Clark,* 108 N.M. at 311, 772 P.2d at 345 (holding that this Court will not issue advisory opinions).

## III.

In conclusion, we hold that the determination of death sentence proportionality is a matter to be addressed by this Court on appeal and is, by implication, within this Court's exclusive constitutional jurisdiction over death sentence appeals. While the district court had broad authority to control Defendant's capital murder trial, *see Garcia,* 93 N.M. at 53, 596 P.2d at 266 (stating that the district court has exclusive jurisdiction over felony cases); *Parsons,* 781 P.2d at 1282 (stating that the district court has broad latitude to control and manage trial proceedings), it had no authority to evaluate death sentence proportionality. Thus, the district court's ruling was erroneous. This case is reversed and remanded to the district court for trial consistent with this opinion.

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and RANSOM, FRANCHINI and FROST, JJ., concur.