**Certiorari Granted, May 11, 2012, No. 33,566; Certiorari Granted, May 11, 2012, No. 33,567**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-050**

**Filing Date: March 13, 2012**

**Docket No. 30,664**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**LETICIA T.**,

       **Child-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}**    Pursuant to a conditional plea, Child was adjudicated delinquent for committing aggravated battery on a peace officer (deadly weapon) and aggravated assault (deadly

weapon). Child reserved the right to appeal the district court's denial of her motion to suppress and motion to dismiss for an untimely trial. Child asserts that her motion to suppress was improperly denied because searching the trunk of her car without a search warrant was not warranted by either exigent circumstances or as a protective sweep. In addition, Child asserts that her motion to dismiss was improperly denied because she did not have a timely preliminary hearing or trial. Finally, Child argues that she is entitled to pre-disposition confinement credit. We reverse in part, affirm in part, and remand for further proceedings.

## I. MOTION TO SUPPRESS

{2} Child filed a motion to suppress evidence obtained from a warrantless search of the trunk of her vehicle, asserting that the search violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Following an evidentiary hearing, the district court denied Child's motion on grounds that exigent circumstances validated the warrantless search.

### A. Facts

{3} There is no dispute about the material facts. An armed subject was reported to have pointed a rifle from the passenger side window of a vehicle at several persons as they were standing in a parking lot on 20th Street in Farmington, New Mexico. One of the persons called the police, and a dispatch was sent out to officers of the Farmington Police Department to locate the vehicle, which was described as a four-door, beige or light tan passenger car.

{4} Officer Coate located the vehicle within minutes of the dispatch, and he pulled it over near the Sonic on 20th Street. Because the car matched the one identified by dispatch, Officer Coate decided to conduct a felony stop and called for backup. Officer Swenk subsequently arrived at the scene. Officer Coate observed rocking and moving in the vehicle after it stopped, which in his experience, generally indicates that the passengers are changing positions within the vehicle. However, he could not see exactly what was going on in the vehicle or how many people were inside the vehicle because it had dark, tinted windows.

{5} Child, who was sixteen years old, stepped out of the front passenger side of the vehicle, and Officer Coate ordered Child to raise her hands and move backwards toward him. While Officer Coate kept his firearm pointed at the car, Officer Swenk conducted a pat-down search of Child, handcuffed her, and directed her to the back of the patrol vehicle, out of Officer Coate's sight. When Officer Swenk started a second pat-down search, Child shouted at the officer to let her go, spun quickly to the left, and struck Officer Swenk in the face with her fist while holding the handcuffs that she had apparently slipped out of. Officer Swenk took her to the ground, regained control, handcuffed her again, and put her in Officer Coate's patrol car. The other occupants of Child's car—a boy nine to twelve years of age and a girl younger than Child—were ordered out of the vehicle according to the same protocol for a felony stop. All the children were placed in separate patrol cars in handcuffs.

2

**{6}**    Officer Smith, a canine officer, whose dog is certified in all patrol activities, including finding people and apprehending combative suspects, arrived and was told that the other officers had already pulled several persons out of the vehicle, but it was unknown if anyone else was inside. Officer Smith sent the dog to see if anyone else was inside the car, and the dog searched the passenger compartment of the car but did not alert to any occupants. Officer Smith said that the dog did not search the trunk because it was distracted by the human odor of a crowd of people that had gathered across the street, and it was more interested in them than the car. Officer Smith called the dog back from the vehicle after it failed to alert. Officer Smith testified that a "secondary search" of the vehicle was necessary because dogs are not infallible, and unless the trunk was opened, the officers could not be sure if anyone was hiding inside.

**{7}**    Officer Coate testified that once the car was cleared, the officers had a duty to check the trunk of the vehicle to check for anyone that might be hiding inside. He had prior experiences in which individuals had hidden themselves inside a trunk, and he felt that someone "could be" hiding inside the trunk because the report was that there had been a person pointing a rifle out of the window of the car, and no weapon was found inside the passenger compartment.

**{8}**    Two additional officers, Sergeant Simmons and Officer Rahn, were also at the scene. A rifle was found when Sergeant Simmons opened the trunk of the car. Sergeant Simmons testified that after the three occupants were taken from the vehicle, standard operating procedure required the officers to visually clear the front and rear compartments of the vehicle, as well as the trunk. This is because it is not uncommon for people to be found hiding in trunks, and the officers check the trunk to prevent an ambush, which is a possibility. Officer Rahn testified that the officers opened the trunk because they are trained to do so during a felony stop, and a person can easily hide inside the trunk. He added that officers always conduct a "secondary search" even when a dog is used to detect humans because the dog is not always 100% accurate.

## B.    Standard of Review

**{9}**    The parties agree that our review of whether exigent circumstances justified the warrantless search of the trunk is de novo. We agree. "[W]e review the district court's findings of historical fact under a deferential, substantial evidence standard, and then we determine de novo if the facts, as so established, support the conclusion of exigent circumstances." *State v. Moore*, 2008-NMCA-056, ¶ 10, 144 N.M. 14, 183 P.3d 158; *see State v. Attaway*, 117 N.M. 141, 145-46, 870 P.2d 103, 107-08 (1994) ("[W]e conclude that the mixed question involved in determining exigency lies closest in proximity to a conclusion of law, and hold that such determinations are to be reviewed de novo."), *modified by State v. Lopez*, 2005-NMSC-018, ¶¶ 9, 11, 138 N.M. 9, 116 P.3d 80 (stating that while the appellate court reviews purely historical factual assessments for substantial evidence, "we review the district court's determination of exigency de novo").

## C.    Analysis

**{10}** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" is protected by the Fourth Amendment to the United States Constitution. U.S. Const. amend IV. In addition, Article II, Section 10 of the New Mexico Constitution protects the right of the people to be "secure in their persons, papers, homes and effects, from unreasonable searches and seizures[.]" N.M. Const. art. II, § 10. A search undertaken without a search warrant is presumptively unreasonable unless it is undertaken pursuant to a valid exception to the warrant requirement. *State v. Zamora*, 2005-NMCA-039, ¶ 15, 137 N.M. 301, 110 P.3d 517 (citing *State v. Wright*, 119 N.M. 559, 562, 893 P.2d 455, 458 (Ct. App. 1995)). The burden is on the State to justify a warrantless search, and the burden is a heavy one. *Id.*

**{11}** Exigent circumstances is one of the recognized exceptions for conducting a search without a warrant. *State v. Garcia*, 2005-NMSC-017, ¶ 29, 138 N.M. 1, 116 P.3d 72. Our Supreme Court has given us a comprehensive description of what constitutes exigent circumstances:

> Exigent circumstances means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. The determination is not whether the suspect was in fact intending to harm someone, escape, damage property, or destroy evidence. Rather it is a determination of whether in a given situation a prudent, cautious, and trained officer, based on facts known, could reasonably conclude swift action was necessary. If there are exigencies, they must be known by the police prior to entry. Moreover, the presence of exigent circumstances must be supported by specific articulable facts.

*State v. Duffy*, 1998-NMSC-014, ¶ 70, 126 N.M. 132, 967 P.2d 807 (internal quotation marks and citations omitted), *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828; *see Garcia*, 2005-NMSC-017, ¶ 30; *State v. Gomez*, 1997-NMSC-006, ¶ 39, 122 N.M. 777, 932 P.2d 1.

**{12}** Our review of the evidence is that five armed police officers were on the scene. The three children who had occupied the vehicle were taken into custody, handcuffed, and placed into separate police cars. A trained dog was sent to determine if anyone else was inside the car. After the dog failed to alert that anyone was inside the car, Officer Smith decided that the dog was being distracted and called off further searching of the trunk. Sergeant Simmons then opened the trunk because, he said, it was required by standard operating procedure. Officer Rahn said that the officers opened the trunk because they are trained to search the trunk during a felony stop, and he also agreed with Officer Smith's testimony that a "secondary search" is always conducted even when a dog is used because dogs are not infallible.

**{13}** The foregoing evidence fails to establish that the trunk was searched because specific, articulable facts demonstrated the existence of an emergency situation requiring swift action to prevent imminent danger to life or to forestall the imminent destruction of evidence. Rather, it was searched because "standard operating procedure" dictated that it

4

be searched. Our constitution requires more than "standard operating procedure" to justify the warrantless search of an automobile which the police officers have full custody and control over. "In New Mexico, exigent circumstances are not presumed; instead, our State Constitution requires a warrantless seizure of evidence from within a vehicle to be justified by a particularized showing of exigent circumstances." *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025.

**{14}** The strongest testimony offered by the State was by Officer Coate. He felt that someone "could be" hiding in the trunk because the report was that someone had pointed a rifle out of the window of the car, and no weapon was seen inside the passenger compartment. However, he is not the officer who actually opened the trunk, and other officers only testified that there was a general possibility that an individual could hide inside a trunk. Aside from the possibility, neither Officer Coate nor any other officer testified about any facts which led them to suspect anyone was actually hiding in the trunk. A mere possibility that someone might be hiding in the trunk does not constitute an exigency. *See Moore*, 2008-NMCA-056, ¶ 17 (rejecting the contention that a possibility of other suspects being inside a home who could have escaped or destroyed evidence did not constitute exigent circumstances).

**{15}** The State argues, alternatively, that searching Child's trunk without a search warrant was permissible as a protective sweep, another recognized exception to the warrant requirement. *Zamora*, 2005-NMCA-039, ¶ 15. A protective sweep is "'a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'" *State v. Trudelle*, 2007-NMCA-066, ¶ 21, 142 N.M. 18, 162 P.3d 173 (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). We assume, as the parties have, that the search of the trunk was incident to Child's arrest. We also assume, without deciding, that a protective sweep search can extend to the locked trunk of an automobile. However, the circumstances under which a protective sweep may be undertaken are limited and specific:

> A protective sweep may be undertaken if the searching officers possess a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrants the officer in believing that the area swept harbored an individual posing a danger to the officer or others.

*Id.* (alterations, internal quotation marks, citation omitted); *see Zamora*, 2005-NMCA-039, ¶16 (same). We conclude that justification to search the trunk of Child's car as a protective sweep fails for the same reasons that the search was not justified by exigent circumstances. *See State v. Sublet*, 2011-NMCA-075, ¶ 30, 150 N.M. 378, 258 P.3d 1170 (concluding that the state failed to present evidence of exigency or evidence to support a protective sweep theory).

## II. MOTION TO DISMISS

**{16}** Child filed a motion to dismiss on grounds that she did not receive a timely preliminary hearing as required by Rule 10-213 NMRA, and because her trial was not held

in accordance with the time limits set forth in Rule 10-243 NMRA. After the State responded, the district court denied Child's motion.

## A.  Facts

**{17}**  Child was arrested and taken into juvenile detention on February 7, 2010. At the detention hearing the next day, Child was served with the juvenile petition and she entered a denial to its allegations. Child was denied conditions of release and remained in detention. On February 15, 2010, the State filed a notice of intent to invoke an adult sentence, by virtue of the allegation of aggravated battery upon a peace officer. *See* NMSA 1978, § 32A-2-3(J)(1)(f) (2009) (stating that a "youthful offender" includes a delinquent child subject to adult or juvenile sanctions who is fourteen to eighteen years of age at the time of the offense who is adjudicated to have committed aggravated battery upon a peace officer). The preliminary hearing was held twenty-four (24) days later, on March 11, 2010. The bind over included the youthful offense of battery upon a peace officer.

**{18}**  The State filed the criminal information on March 16, 2010, and Child was arraigned on March 24, 2010, whereupon she entered a plea of not guilty. Child was again denied conditions of release and remained in juvenile detention. A sixty-day extension of time to commence trial until May 9, 2010, was granted over Child's objection, and the State did not seek any additional extensions to commence trial. When Child filed the motion to dismiss on June 10, 2010, the trial had not been held, and trial was scheduled for July 9, 2010. Child's motion to dismiss was denied.

## B.  Standard of Review

**{19}**  When we are required to interpret rules of procedure adopted by our Supreme Court, or statutes adopted by the Legislature, our review is de novo. *State v. Stephen F.*, 2006-NMSC-030, ¶ 7, 140 N.M. 24, 139 P.3d 184 (applying de novo review to interpretation of Children's Court Rules), *aff'd on other grounds by* 2008-NMSC-037, 144 N.M. 360, 188 P.3d 84; *State v. Myers*, 2009-NMSC-016, ¶ 13, 146 N.M. 128, 207 P.3d 1105 (applying de novo review to statutory construction), *rev'd on other grounds by* 2011-NMSC-028, 150 N.M. 1, 256 P.3d 13.

## C.  Analysis

**{20}**  The preliminary hearing was held twenty-four days after the State filed its notice of intent to seek an adult sentence. Accordingly, Child did not receive a timely preliminary hearing. Rule 10-213(B) requires the preliminary hearing to be held within fifteen days after the State files its notice of intent to seek an adult sentence, and NMSA 1978, Section 32A-2-20(A) (2009), requires the preliminary hearing to be held within ten working days after the state files its intent to seek an adult sentence. It is not necessary for us to decide in this case whether the rule or the statute governs because they were both violated. Neither the rule nor the statute provides a remedy, even though they are both worded in mandatory terms. Our task is to determine whether any relief is available to Child.

6

**{21}**     Rule 10-101(A)(2)(b) NMRA of the Children's Court Rules states that "[e]xcept as specifically provided by these rules, . . . the Rules of Criminal Procedure for the District Courts govern the procedure . . . in all proceedings in the Children's Court in which a notice of intent has been filed alleging the child is a 'youthful offender.'" *See State v. Michael S.*, 1998-NMCA-041, ¶¶ 2-5, 124 N.M. 732, 955 P.2d 201  (describing the general history of the procedures to be followed when the state alleges a child is a "youthful offender").  Rule 10-144 NMRA of the Children's Court Rules states:

> Error or defect in any ruling, order, act or omission by the court or by any of the parties *including failure to comply with time limits* is not grounds for granting a new hearing or for setting aside a verdict, for vacating, modifying or otherwise disturbing a judgment or order, or for dismissing an action, unless refusal to take any such action appears to the court inconsistent with substantial justice or unless these rules expressly provide otherwise.

(Emphasis added.)  This is a rule which specifically applies in lieu of the Rules of Criminal Procedure, and it directs that dismissal is not appropriate, "unless refusal to take any such action appears to the court inconsistent with substantial justice," or unless the Children's Court Rules "expressly provide otherwise."  *Id.*  Here, there was no such finding, and we have not been directed to any Children's Court Rule which requires dismissal for the failure to hold a timely preliminary hearing.  As to the statutory violation, we conclude that a child must demonstrate prejudice in order to be entitled to dismissal.  *See State v. Tollardo*, 99 N.M. 115, 117, 654 P.2d 568, 570 (Ct. App. 1982) (stating that dismissal is not the proper remedy for a delay in holding a preliminary examination when prejudice to the defendant is not shown).  We therefore conclude that no reversible error was committed in denying Child's motion to dismiss on grounds she was denied a timely preliminary hearing.

**{22}**     We now address whether Child was denied her right to a speedy trial.  As we have already stated, the Children's Court Rules specifically state that unless the Children's Court Rules provide otherwise, "the Rules of Criminal Procedure for the District Courts govern the procedure . . . in all proceedings in the Children's Court in which a notice of intent has been filed alleging the child is a 'youthful offender' as that term is defined in the Children's Code."  Rule 10-101(A)(2)(b).

**{23}**     When Rule 10-101 was adopted by our Supreme Court, the Rules of Criminal Procedure contained a provision in Rule 5-604 NMRA (amended 2011), known as the six-month rule which, in general, required a trial on the merits to be held within six months of a triggering event.  *See Duran v. Eichwald*, 2009-NMSC-030, ¶ 2, 146 N.M. 341, 210 P.3d 238 ("Rule 5-604(B), commonly referred to as the six-month rule, requires the commencement of trial in a criminal proceeding within six months of the latest of several different triggering events.").  In keeping with the plain language of the rules, we held in *Michael S.* that the six-month rule in the former Rule 5-604 applied to the adjudication of youthful offender cases.  1998-NMCA-041, ¶ 6.  We also observed, "In view of the important purposes served by time limits on children's court proceedings, we cannot countenance an interpretation of the rules that would provide endless time, subject only to constitutional constraints, in which to try cases involving serious youthful offenders."  *Id.*

7

¶ 7. In a similar vein, our Supreme Court made the following statement in *State v. Jones*, 2010-NMSC-012, ¶ 32 n.2, 148 N.M. 1, 229 P.3d 474:

> Rule 10-101(A)(2)(b) provides that, unless the Children's Court Rules specifically provide, the Rules of Criminal Procedure for the District Courts apply to alleged youthful offenders after the State gives notice of its intent to invoke adult sanctions. We adopted the Rule shortly after the 1993 enactment of the Children's Code. Our unpublished commentary indicates that because an alleged youthful offender potentially faces an adult sanction, we chose to apply the Rules of Criminal Procedure in an effort to provide more protections than the Children's Court Rules do. Specifically, we intended to extend the right to bail, the statutory right to three telephone calls within 20 minutes after detention, and in a warrantless arrest and detention case, the right to be given a copy of the criminal complaint prior to transfer to custody of a detention facility, and the right to a prompt probable cause determination. With the exception of the right to bail, we are no longer convinced that the above-mentioned rights justify forfeiting the additional protections afforded juveniles in the Children's Court Rules. *Compare, e.g.*, Rule 10-243 NMRA (providing that the adjudicatory hearing shall commence within 30 days for a child held in detention and within 120 days for a child not in detention) *with* Rule 5-604 NMRA (providing that a trial shall commence within six months). The issue is beyond the scope of this Opinion, but we encourage the Children's Court Rules Committee to revisit the question of which rules best protect the rights and interests of children.

Later that same year, our Supreme Court withdrew the six-month provisions of Rule 5-604 for all pending cases. *State v. Savedra*, 2010-NMSC-025, ¶ 9, 148 N.M. 301, 236 P.3d 20. "In its place," our Supreme Court declared, "defendants may rely upon and assert their right to a speedy trial whenever they believe impermissible delay has occurred[.]" *Id.* However, notwithstanding our observation in *Michael S.*, and our Supreme Court's statement in *Jones*, no change was made to the Children's Court Rules to insure speedy, timely trials for cases involving serious youthful offenders. This leaves Child with no remedy except for a constitutional speedy trial violation, and Child did not argue in the district court or on appeal that she was deprived of her constitutional right to a speedy trial.

{24}    Child contends that because our Supreme Court withdrew the six-month rule in Rule 5-604, our holding in *Michael S.* that the rule applies to youthful offender cases has been overruled *sub silentio*. Child further contends that we should "pay special attention to the Supreme Court's repeated assertions in *Jones* that juveniles should be afforded heightened protections to guard their liberty interests," and "[b]ecause youthful offenders fall subject to the statutory ambiguity created in the wake of *Savedra*, the Rules of Criminal Procedure should not blanketly apply to youthful offender cases until after the amenability determination. Such a decision would be consistent with *Jones*, legislative history, and public policy." To support her last assertion, Child refers us to *Jones*, 2010-NMSC-012, ¶ 38 ("[T]he finding of non-amenability gives the court the necessary leverage to dislodge a youthful offender from the protective dispositional scheme of the Delinquency Act."). Accordingly, Child asserts that Rule 10-243 of the Children's Court Rules should apply to

8

her case. In general, this rule directs that when a child is in detention, as Child was in this case, the adjudicatory hearing must be held within thirty days after the latest occurrence of certain specified triggering events, such as the date that the petition is served on the child and the date the child is placed in detention. When the time limit is not complied with, Subsection (F) grants the district court authority to order that the petition be "dismissed with prejudice or the court may consider other sanctions as appropriate." Rule 10-243(F).

**{25}** Child makes a compelling argument, and we could easily be persuaded to follow the suggestion made by our Supreme Court in *Jones* to craft a remedy for Child in this case. However, as Child observes in her briefing, we have no authority to write or rewrite rules of procedure, which lies within the exclusive domain of our Supreme Court. *See State v. Pieri*, 2009-NMSC-019, ¶ 19, 146 N.M. 155, 207 P.3d 1132 (stating that our Supreme Court has "the ultimate authority to fashion, adopt, and amend rules of procedure by virtue of the authority granted . . . in Article III, Section 1 and Article VI, Section 3 of the New Mexico Constitution"). As matters now stand, Child's exclusive protection lies in the speedy trial protections of the Sixth Amendment and Article II, Section 14 of the New Mexico Constitution, and as we have already observed, a constitutional speedy trial issue is not before us.

**{26}** For the reasons stated, Child's right to a speedy trial was not violated under our existing rules. Like our Supreme Court, we also encourage the Children's Court Rules Committee to revisit which time limit rules should apply to the adjudication of youthful offender cases which best protect the rights and interests of children in New Mexico.

## III.    CREDIT FOR PRE-SENTENCE CONFINEMENT

**{27}** After the incident, and prior to her commitment to the Children, Youth and Families Department for two years, Child spent approximately 160 days in detention. Child argues that as a youthful offender, she is entitled to credit for her pre-sentence detention period. The State argues that Child waived raising this argument on appeal because she only preserved for appeal the issues regarding her motion to suppress and motion to dismiss in her conditional plea. While we agree with Child's argument that this is an important issue for resolution, we do not reach it in this case. Because we have held that the district court erred in denying Child's motion to suppress, the judgment and disposition is no longer operative, and any decision we would make concerning this issue would be advisory. *See State v. Wyrostek*, 117 N.M. 514, 523, 873 P.2d 260, 269 (1994) (stating that the Court will not issue advisory opinions).

**{28}** We therefore decline to reach this issue or determine whether Child waived it under the terms of her conditional plea.

## IV.    CONCLUSION

**{29}** The judgment and disposition is reversed and the case is remanded for further proceedings consistent with this Opinion.

**{30}** IT IS SO ORDERED.

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for _State v. Leticia T._, Docket No. 30,664**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-HE | Harmless Error |
| AE-RM | Remand |
| AE-SR | Standard of Review |

| **CD** | **CHILDREN** |
|---|---|
| CD-CC | Children's Code |
| CD-CR | Children's Court |
| CD-YO | Youthful Offender |

| **CL** | **CRIMINAL LAW** |
|---|---|
| CL-AO | Assault or Battery on a Peace Officer |

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-DC | Dismissal of Charges |
| CA-EC | Exigent Circumstances |
| CA-PJ | Prejudice |
| CA-SP | Speedy Trial |
| CA-TL | Time Limitations |
| CA-WS | Warrantless Search |