**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-075**

**Filing Date:  June 8, 2011**

**Docket No. 28,819**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**DARRICK SUBLET,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**     Defendant Darrick Sublet appeals the court's denial of his motion to suppress.  An undercover detective entered the apartment that Defendant occupied, engaged in a drug buy, and signaled an awaiting police team which then entered the apartment and detained the occupants.  Defendant contends that after the occupants of the apartment were taken and detained outside some members of the police team reentered the apartment without a warrant resulting in an unlawful search that followed.  We agree that the search was unlawful and reverse the denial of the motion to suppress.

1

## I. BACKGROUND

**{2}** We summarize the underlying events in the light most favorable to the ruling rendered below. *See State v. Flores*, 2008-NMCA-074, ¶ 2, 144 N.M. 217, 185 P.3d 1067. Detective Brett Lampiris-Tremba, working undercover and posing as a drug buyer, arranged for a purchase of cocaine from Annette Salvato. The detective, Salvato, and a confidential informant went inside an apartment to complete the undercover drug transaction. Defendant was one of several others in the apartment at the time of the transaction. The detective and the informant were taken to a back bedroom where the detective gave Salvato money to purchase eleven stones of crack cocaine. There was another person in the bedroom sitting on one of the beds with a pair of scissors beside him smoking what appeared to be crack cocaine. The man offered the detective some crack cocaine, but he refused.

**{3}** Salvato left the bedroom, shut the door, returned a few minutes later, and gave Detective Lampiris-Tremba what appeared to the detective to be cocaine, which the detective put in his pocket. The detective then gave a prearranged arrest signal to surveillance narcotics detectives, after which the detective heard commotion and people yelling and "more banging on the door," and the detective saw Defendant run into the bedroom where the detective was located, yelling "[t]ask force, task force." The detective "continue[d] playing [his] role as a drug buyer" and acted like he was one of the suspects. The detective saw Defendant run into the closet of the bedroom and "jump[] repeatedly up and down in the closet, as if trying to push something [to] the top." Detective Lampiris-Tremba testified that Defendant appeared to be trying to hide something, possibly money or drugs, in the upper right area of the closet. He also testified that he could not see what was in Defendant's hand, but that it was later determined that Defendant was stuffing the buy-money that Defendant had given Salvato into what was characterized as both a hole and a crawl space in the upper closet area that was large enough for a person.

**{4}** Occupants of the apartment, including Detective Lampiris-Tremba, were detained, handcuffed, and escorted outside. Detective Lampiris-Tremba told his fellow officers, including Detective Martinez, that he thought Defendant had hidden "something in the ceiling" in the bedroom closet and that "[y]ou guys . . . need to look up there." Detective Martinez and the other officers went back into the apartment and when one of the officers, who was "a pretty large guy" could not fit into the hole, two officers helped Detective Martinez get into the hole where he found the buy-money. By this time, Defendant and Salvato had been arrested.

**{5}** Defendant was charged with trafficking by distribution (cocaine), conspiracy to commit trafficking by distribution (cocaine), and tampering with evidence. *See* NMSA 1978, § 30-31-20(A)(2) (2006); NMSA 1978, § 30-28-2 (1979); NMSA 1978, § 30-22-5 (2003). Defendant moved to suppress the evidence obtained from the closet as the fruit of a warrantless and therefore an unlawful search in violation of the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. He argued that the search was not authorized by any exception to the warrant requirement and focused his argument on the exigent-circumstances exception, as well as the protective-sweep exception.

**{6}** In response, the State claimed that (1) Defendant did not have standing because he had no legitimate expectation of privacy in the residence searched; (2) the evidence of a crime was in plain view; (3) exigent circumstances, relating to safety concerns and the likelihood that the evidence would be destroyed, justified the warrantless search; (4) the search of the closet was authorized as a protective sweep incident to arrest; and (5) Defendant abandoned the evidence by placing it where it could not be linked to or associated with him.

**{7}** After a hearing, the district court found that Defendant had a legitimate expectation of privacy to challenge the search of the apartment, but the court denied the motion to suppress. The court determined that Detective Lampiris-Tremba was lawfully in the apartment and that his observations did not impact Defendant's constitutional rights. The district court further found that "[e]xigent circumstances existed at the time of the officers' entry into the apartment to justify both the entry and subsequent protective sweep of the apartment. The protective sweep lawfully included the closet and the hole in the upper closet area where a person could hide[.]" The district court also found that "[t]o the extent that . . . [D]efendant had any standing or claim of an expectation of privacy in the undercover buy-money used in the investigation, he abandoned any such claim when he disposed of the money by throwing it in the hole in the upper closet area of the bedroom[.]" After entering a conditional plea to trafficking by distribution (cocaine), Defendant appealed the denial of his motion to suppress.

## II.    DISCUSSION

### A.    Standard of Review

**{8}** A motion to suppress evidence based on an alleged unlawful search or seizure involves a mixed question of law and fact. Our review procedure is set out in *State v. Leyva*, 2011-NMSC-009, ¶ 30, __N.M. __, 250 P.3d 861, *State v. Sewell*, 2009-NMSC-033, ¶ 12, 146 N.M. 428, 211 P.3d 885, *State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922, and *State v. Vandenberg*, 2003-NMSC-030, ¶¶ 17-19, 134 N.M. 566, 81 P.3d 19. In the present case, we review de novo the constitutional reasonableness of the actions of the officers. *Vandenberg*, 2003-NMSC-030, ¶ 19. We look at the totality of circumstances. *Leyva*, 2011-NMSC-009, ¶¶ 30, 59; *Vandenberg*, 2003-NMSC-030, ¶ 19. We view the facts in the light most favorable to the prevailing party. *Sewell*, 2009-NMSC-033, ¶ 12.

### B.    Standing:  Expectation of Privacy in the Apartment

**{9}** The State argues that Defendant did not have standing to object to the search because he did not have a reasonable expectation of privacy in the apartment. We disagree. "Whether a defendant has standing involves two inquiries:  (1) whether the defendant had an actual, subjective expectation of privacy in the premises searched;  and (2) whether the defendant's subjective expectation [is] one that society is prepared to recognize as reasonable." *State v. Zamora*, 2005-NMCA-039, ¶ 10, 137 N.M. 301, 110 P.3d 517 (alteration in original) (internal quotation marks and citation omitted).

3

**{10}** In support of his expectation of privacy, Defendant testified that he had been staying in the apartment for about three weeks, slept in both the living room and the bedrooms, and had access to the kitchen and bathroom. Defendant testified that Ernesto Rodriguez was allowed to stay in the apartment because Rodriguez paid rent, and Rodriguez allowed Defendant to stay in the apartment because Defendant paid Rodriguez $50 per week. Defendant further testified that he kept his clothes and personal hygiene items in the apartment in a drawer in one of the bedrooms. Defendant's testimony establishes that he had a subjective expectation of privacy in the apartment. *See id.* ¶ 11.

**{11}** The State contends that even if Defendant had a subjective expectation of privacy, that expectation is not one that society is prepared to recognize as reasonable because of the complete absence of evidence that Rodriguez was a lawful owner or renter of the premises and that Rodriguez had any right or authority to allow Defendant to stay in the apartment. The State asserts that without such evidence Defendant could not establish standing because he could not show that he was anything other than a trespasser. We are not persuaded.

**{12}** Defendant's testimony was not rebutted by the State, and the State offered no evidence questioning Defendant's right to stay in the apartment. *Cf. id.* ¶ 13 (recognizing that house guests have a right to challenge a search of the premises if they were permitted "by the owner or occupant of the property to use a private part of the residence"). The district court found that Defendant had an actual and subjective expectation of privacy in the apartment and had standing to challenge the search. The court thought that the issue would have been "a little closer had the State presented . . . some evidence to establish that Ernesto Rodriguez didn't have the lawful right to convey the right to . . . [D]efendant to stay or to remain in the residence."

**{13}** Given Defendant's unrebutted testimony that he resided in the apartment based on Rodriguez's permission and his and Rodriguez's payment of rent, we are unpersuaded that the lack of any additional testimony regarding Rodriguez's authority to allow Defendant's occupancy is fatal to Defendant's claim to standing. *Cf. State v. Ryan*, 2006-NMCA-044, ¶¶ 22-27, 139 N.M. 354, 132 P.3d 1040 (recognizing that an individual's privacy expectation in a home is usually very high, but holding that any such expectation in the case with regard to two searches and viewing one videotape was unreasonable given the evidence presented by the prosecution rebutting the defendant's claim to an expectation of privacy); *State v. Hensel*, 106 N.M. 8, 9-10, 738 P.2d 126, 127-28 (Ct. App. 1987) (holding that the defendant did not have standing to object to the search of a house where there was no evidence he had the owner's permission, explicit or implicit, to reside there, and no evidence that he was, in fact, residing in or occupying the house), *rev'd in part on other grounds by State v. Rivera*, 2008-NMSC-056, 144 N.M. 836, 192 P.3d 1213.

**{14}** We note that the State heavily relies on *State v. Van Dang*, 2005-NMSC-033, 138 N.M. 408, 120 P.3d 830, in support of its contention that Defendant needed to make an affirmative showing of Rodriguez's authority. In *Van Dang*, our Supreme Court held that the driver of a rented vehicle failed to demonstrate a reasonable expectation of privacy in the vehicle when the rental contract did not list him as the driver, and he presented no direct evidence that a lawful owner or renter of the vehicle had given him permission to operate

4

the vehicle. *Id.* ¶¶ 7, 11-12. We are unpersuaded that the holding in *Van Dang* required Defendant to have introduced evidence beyond his own testimony in this case.

{15}     In *Van Dang*, the defendant testified at the suppression hearing that he had a right to drive the rental car, but he did not testify that the person who rented the car had given him permission to drive it. *Id.* ¶ 2. In reaching its holding that the defendant lacked standing, our Supreme Court relied on the fact that the defendant failed to present any direct evidence that the person who rented the vehicle gave him permission to operate it. *Id.* ¶ 12. The Court also specifically relied on the defendant's failure to even claim he was authorized by the renter to operate the vehicle. *Id.* As previously discussed, in the present case, unlike in *Van Dang*, Defendant indicated that he paid rent to Rodriguez, had permission to stay in the apartment, and Rodriguez himself paid rent to reside in the apartment.

{16}     Furthermore, in *Van Dang*, our Supreme Court was considering a claimed privacy interest in an automobile. *Id.* ¶¶ 7, 11-12. The present case involves a dwelling, and our appellate courts have long recognized "[t]he constitutional distinction between vehicles and homes turns on . . . privacy expectation. A lesser expectation of privacy attaches to a vehicle." *State v. Ryon*, 2005-NMSC-005, ¶ 23, 137 N.M. 174, 108 P.3d 1032; *cf. State v. Esguerra*, 113 N.M. 310, 313-14, 825 P.2d 243, 246-47 (Ct. App. 1991) (recognizing that the privacy interest in one's dwelling place is entitled to "the highest degree of protection from unreasonable intrusion by the government"). The State acknowledged as much in the hearing in district court.

{17}     Defendant presented evidence of his and Rodriguez's permission to occupy the apartment. A person's subjective expectation of privacy in an apartment in which the person is paying rent for occupancy and is residing is an expectation of privacy that society is prepared to recognize as reasonable. *See Zamora*, 2005-NMCA-039, ¶¶ 10-14 (holding that the defendant had a subjective expectation of privacy in a motel room that society is prepared to recognize as reasonable based on the defendant's testimony that he had an expectation of privacy "because his 'family' was there and because he was going to spend the night there"). The district court correctly ruled that Defendant had standing to seek suppression of the buy-money evidence.

## C.     Expectation of Privacy in the Property Seized

{18}     The State argues on appeal, as a related aspect of standing, that Defendant cannot challenge the seizure of the buy-money and seek its suppression because he unlawfully possessed it and therefore could have no reasonable expectation of privacy in it. The argument appears to stem in part from the statement in *Van Dang*, cited by the State in its answer brief, that "[g]enerally, one who owns, controls, or lawfully possesses property has a legitimate expectation of privacy." *Van Dang*, 2005-NMSC-033, ¶ 7.

{19}     In its answer brief on appeal, the State compares the buy-money in the present case to property that a person steals, citing *United States v. Caymen*, 404 F.3d 1196, 1200 (9th Cir. 2005), for the proposition that "[t]he Fourth Amendment does not protect a defendant from a warrantless search of property that he stole" because any expectation to maintain

5

privacy in the contents of stolen property "is not one that society is prepared to accept as reasonable." (Internal quotation marks and citation omitted.) We are not persuaded. *Caymen* is limited to instances where a thief claims an expectation of privacy in stolen goods. *See id.* ("Whatever possessory interest a thief may have, that interest is subordinate to the rights of the owner[.]"). We will not, as the State wishes, tie *Caymen* and stolen goods into *Van Dang*'s general language of "lawfully possesses property" to deny Defendant in the present case a reasonable expectation of privacy. *See State v. Tanner*, 745 P.2d 757, 759 (Or. 1987) (en banc) ("An unlawful search that uncovers effects such as stolen goods or contraband, which also may not be legally possessed, will nevertheless result in suppression of those effects because the unlawfulness involves an infringement of rights apart from possessory interests (or the lack thereof) in the stolen goods or contraband seized as a consequence of the unlawful search.").

{20}     The State's reliance in oral argument on *Bomboy* is misplaced. In *Bomboy*, our Supreme Court held that the defendant had no expectation of privacy in methamphetamine he had placed in a highly visible area in a vehicle and in a police officer's plain view. *State v. Bomboy*, 2008-NMSC-029, ¶ 10, 144 N.M. 151, 184 P.3d 1045. The Court stated that the officer reaching into the car was not an "infringement on a legitimate expectation of privacy." *Id.* The Court continued, saying, "[l]ikewise, there can be no infringement on [the d]efendant's possessory interest in the methamphetamine because an individual does not have a lawful right to possess such contraband[,]" citing for support *State v. Foreman*, 97 N.M. 583, 642 P.2d 186 (Ct. App. 1982). *Bomboy*, 2008-NMSC-029, ¶ 10. In *Foreman*, this Court held that the "[d]efendant's privacy expectations in [a] cowboy boot box were *lawfully* breached by [an] inventory search." 97 N.M. at 585, 642 P.2d at 188 (emphasis added). We are not willing to apply or expand either the holdings in these cases or the language they use to the present case. The facts in *Bomboy* and *Foreman* are far removed from those in the present case. In *Foreman*, the search was of the contents of a container, and the search was lawful. *Id.* In *Bomboy*, it seems clear that because a vehicle was involved, exigency permitted the officer's breach of the vehicle plane to seize contraband in plain view. 2008-NMSC-029, ¶ 2. *Bomboy* and *Foreman* did not directly address the issue here, and their general statements were not made with any particular regard to their general applicability. Furthermore, that Defendant's possession of the buy-money in the present case may not have been lawful does not deprive him of standing to seek its suppression under the exclusionary rule. *Tanner*, 745 P.2d at 759. The search was for suspected contraband in a residence, and the search was unlawful because the police did not have a warrant and no circumstances excused the warrantless search. *See United States v. Carnes*, 309 F.3d 950, 959-60 (6th Cir. 2002) (holding that the defendant had standing to seek suppression of audiotape recordings of conversations obtained illegally and stating that "illegally obtained objects, such as contraband, are often suppressed" and "[t]he legality of a person's possession cannot be the lynchpin of their Fourth Amendment standing").

{21}     In addition to mentioning *Bomboy* in oral argument, the State attempted to distinguish the circumstance in the present case from others in which unlawful police conduct precedes an otherwise lawful search for and seizure of contraband, such as when the seized contraband is the fruit of a "poisonous," unlawful detention or warrantless entry into an apartment in violation of the knock-and-announce rule. The State argued that in cases in

which an entry into a house is unlawful, it is the entry that constitutes the Fourth Amendment violation and not the later seizure of contraband in the home. The State further argued that, in the present case, the seizure of the buy-money was to be considered separate and apart from the search and that the seizure in and of itself did not violate the Fourth Amendment. The State argued that Defendant had no expectation of privacy in police buy-money used in an unlawful drug transaction because society would not recognize such privacy expectation as reasonable. Last, the State argued that Defendant could not sustain an expectation of privacy based on assertion of a property interest in the buy-money because Defendant could not be successful in a replevin action were he to attempt to obtain the buy-money from the police.

{22} We see no valid distinction to be made between a suppression case in which suppression of seized contraband is based on an earlier unlawful entry into a residence and a case such as the present where the suppression of seized contraband is based on a simultaneous unlawful search. *See Tanner*, 745 P.2d at 759 (stating that "[s]earches and seizures are separate acts calling for separate analysis" and that "[i]f the police violated any right of [the] defendant's, it was a right against the search that uncovered the effects, not some right in the effects themselves"). The following language in *United States v. Jeffers*, 342 U.S. 48, 52-54 (1951), makes the same point in regard to the government's contention in *Jeffers* regarding the seizure of contraband.

> The significant act . . . is the seizure of the goods of the respondent without a warrant. We do not believe the events are so easily isolable. Rather they are bound together by one sole purpose—to locate and seize the narcotics of respondent. The search and seizure are, therefore, incapable of being untied. . . .
>
> It is urgently contended by the [g]overnment that no property rights within the meaning of the Fourth Amendment exist in the narcotics seized here, because they are contraband goods in which [c]ongress has declared that 'no property rights shall exist'. . . .
>
> . . . We are of the opinion that [c]ongress, in abrogating property rights in such goods, merely intended to aid in their forfeiture and thereby prevent the spread of the traffic in drugs rather than to abolish the exclusionary rule formulated by the courts in furtherance of the high purposes of the Fourth Amendment.
>
> Since the evidence illegally seized was contraband[,] the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial.

(Footnote omitted.) (Citations omitted.)

**{23}** Here, the buy-money can be considered the fruit solely of a warrantless search unexcused by an exception to the warrant requirement, no different from other unlawful searches in which contraband such as buy-money or drugs, which a defendant has no lawful right to possess, is ultimately found in a defendant's possession or control and seized. For the foregoing reasons, we reject the State's contention and argument that Defendant lacked standing to attack the seizure of the buy-money because Defendant lacked any expectation of privacy in the money that society would accept as reasonable.

**D.      The Earlier Warrantless Entry**

**{24}** Defendant does not dispute that Detective Lampiris-Tremba lawfully entered the apartment and had probable cause to arrest Defendant after receiving the cocaine from Salvato in exchange for the controlled buy-money. Defendant challenges the warrantless entry of the police team based on the detective's pre-arranged arrest signal, arguing that no exception to the warrant requirement was shown. We do not address this issue because we hold in Defendant's favor on the issue of the warrantless search and suppression and, therefore, there exists no reason to address the issue.

**E.      The Entry to Search the Closet**

**{25}** Defendant challenges as unlawful what he characterizes as a warrantless "reentry" into the apartment by one or more officers culminating in the officers' warrantless search of the closet area for suspected stashed drugs or drug buy-money after the officers had already detained the occupants and Detective Lampiris-Tremb outside. In response to the State's arguments made in the district court and on appeal to support denial of his suppression motion, Defendant argues that no exigent-circumstances or protective-sweep exception justified the reentry for the purpose of the hole-in-the-closet search that followed. He argues that Detective Lampiris-Tremba could have left before he signaled the police team and could have obtained a warrant and, as well, the officers who reentered could have sought a warrant after detaining the occupants and securing the premises. Defendant further argues that no buy-money was in Detective Lampiris-Tremba's plain view as Defendant was placing it in the closet and that no evidence supports an intent on Defendant's part to abandon the property left in his own place of residence. He argues that the evidence obtained from the search should have been suppressed under the Fourth Amendment and, if not under the Fourth Amendment, then under Article II, Section 10 of the New Mexico Constitution. Because Defendant raised Article II, Section 10 in the district court and the pertinent circumstances were before the district court at the hearing on the suppression motion, Defendant preserved his Article II, Section 10 position. *See Leyva*, 2011-NMSC-009, ¶ 49 (stating the preservation requirements). We agree with Defendant.

**1.      Abandonment**

**{26}** "The party seeking to prove abandonment must show this intent by clear, unequivocal[,] and decisive evidence." *State v. Celusniak*, 2004-NMCA-070, ¶ 26, 135 N.M. 728, 93 P.3d 10 (internal quotation marks and citation omitted). The State provided no evidence of any subjective intent of Defendant to abandon any expectation of privacy in

8

the buy-money. Nor has the State presented authority that persuades us that the stashing of contraband by a defendant in his rented apartment during a police drug-bust constitutes an abandonment of possession.

**{27}** For its abandonment contention, the State relies primarily on *State v. Clark*, 105 N.M. 10, 727 P.2d 949 (Ct. App. 1986), in which the police approached a rented mobile home without a search warrant to locate reported stolen goods and spoke to the landlady-owner. *Id.* at 12, 727 P.2d at 951. At the time, the defendant's rent was unpaid, one eviction notice had been posted, the owner was set to post a second eviction notice, the owner had heard that the defendant was incarcerated, the owner had been told by the defendant's sister to remove his possessions, and the owner gave permission for the police to enter and search. *Id.* The circumstances in the present case are considerably different from those in *Clark*. Furthermore, the circumstances here do not fit within the "several general factual scenarios that give rise to a finding of abandonment[.]" *Celusniak*, 2004-NMCA-070, ¶ 28 (setting out abandonment scenarios). There exists no disclaimer of ownership, discarding of evidence out of a window of a moving vehicle, unsuccessful attempt to destroy the property, or having left the property in vacated premises. *See id.*; *Clark*, 105 N.M. at 12-14, 727 P.2d at 951-53 (holding that the owner of a mobile home was able to consent to a search when the defendant/tenant lacked a reasonable expectation of privacy in the mobile home when he intended to abandon it as his residence).

**{28}** We hold that, in the present case, Defendant did not abandon the buy-money that was ultimately found stashed in the hole in the closet. *See Celusniak*, 2004-NMCA-070, ¶ 29 (holding that, even in the light most favorable to the district court's ruling, the facts of the case departed from this Court's existing abandonment holdings and were too equivocal to support a ruling of abandonment); *cf. Commonwealth v. White*, 327 A.2d 40, 43 (Pa. 1974) (stating that, where the defendant's effects were seized pursuant to an unlawful search while the defendant was not physically present, "there is no evidence that [the defendant] meaningfully abdicated his control, ownership, or possessory interest in the items seized[,] [h]e did not sell them, give them away or abandon them[;] [i]nstead, he left them in the apparent safety and security of his temporary residence, his mother's apartment[, and] [o]ne must, therefore, conclude that [the defendant] had a reasonable expectation that such items would be free from government intrusion whether or not he was physically present").

## 2. Plain View

**{29}** Items may be seized under the plain-view exception to the warrant requirement when the incriminating nature of the evidence is immediately apparent. *State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. There exists no evidence that the buy-money was in plain view of either Detective Lampiris-Tremba or the officers who conducted the search. The detective was the only law enforcement officer who knew directly about something being stashed by Defendant in the closet. But he did not see what was stashed; he testified only that Defendant "jumped repeatedly up and down in the closet, as if trying to push something into the top of the closet[,]" that he "thought maybe [Defendant] was trying to put money in there or more drugs, trying to hide something[,]" that "it looked like[] he was just hiding something[,]" and that he could not actually see what was in Defendant's

hand. That testimony is patently insufficient for application of the plain-view exception to the warrant requirement. *See State v. Rivera*, 2010-NMSC-046, ¶¶ 28-29, 148 N.M. 659, 241 P.3d 1099 (holding under Article II, Section 10 of the New Mexico Constitution that "[t]he plain[-]view doctrine did not authorize [the officer] to open the opaque bundle because he thought he had probable cause to believe the bundles contained marijuana").

### 3.    Exigency and Protective Sweep

{30}    As to exigency, officers must have "knowledge of specific, articulable facts that demonstrate that immediate action is necessary to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Moore*, 2008-NMCA-056, ¶ 14, 144 N.M. 14, 183 P.3d 158 (internal quotation marks and citation omitted). A protective sweep is allowed if incident to an arrest and the officers have a reasonable belief that the area of the sweep harbors a person who poses a danger to the officers or others. *State v. Trudelle*, 2007-NMCA-066, ¶ 21, 142 N.M. 18, 162 P.3d 173. The sweep must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Zamora*, 2005-NMCA-039, ¶ 17 (internal quotation marks and citation omitted).

{31}    The State fails to present evidence of exigency facing the police officers or evidence to support their protective-sweep theory. Nor is there evidence of lack of sufficient time to obtain a warrant. There is simply a complete absence of evidence of circumstances to bring the search and seizure of the buy-money within the reasonableness requirement of the Fourth Amendment and Article II, Section 10 under these exceptions to the warrant requirement. According to Detective Lampiris-Tremba, all occupants were detained outside. Nothing in the record indicates that the officers did not have complete control of the apartment. There obviously existed time to obtain a warrant under the circumstances, and the State relies on no evidence from which one could reasonably conclude that a particular exigency or safety concern required the warrantless search in question. That Detective Lampiris-Tremba felt concerned about his safety while he was in the apartment and before he and the other occupants were arrested and taken outside is irrelevant.

{32}    Further, the State's argument that the search was lawful based on the fact that the officers who searched the hole in the closet discovered that an officer of a certain size was able to fit in the hole is not sustainable. No concern existed, subjectively or objectively, before the search occurred about safety, destruction of evidence, or occupant escape in relation to the dimensions of the place in the closet where Detective Lampiris-Tremba thought Defendant was stashing something. The officers who conducted the search were not aware of a hole beforehand, much less the size of any hole, before they entered the apartment to conduct the particular search of the closet. They certainly were not informed regarding any hole that was large enough for a person to fit in. They entered the apartment based solely on the detective's information for the purpose of searching the closet for stashed buy-money or drugs, not for humans. That the district court found, based on what occurred at the time of the search, that a hole existed and that the hole was large enough for an officer smaller in size to fit in it, is irrelevant, since that fact was learned only at the point that the

officers reached the closet and saw the hole and one of the officers was able to climb to some extent into the hole.

**{33}** We reject the State's argument that, under the circumstances, and objectively, a prudent, cautious, trained officer under the circumstances could have a safety concern, concern for destruction of evidence, or concern about occupant escape, and would have believed it appropriate to check all places in the apartment where suspects could be hiding, including the hole in the closet, particularly given the district court's finding that the hole was large enough for a small officer to enter. The officers entered the apartment solely to search the closet for any object(s) Defendant may have "tried to hide" therein. There exists no evidence from which one can conclude that they subjectively or objectively had any concerns related to safety, destruction of evidence, the presence of any suspect, or the size of any hole in the closet. The State's attempt to bootstrap the after-the-fact occurrence of an officer being lifted up into a hole in the closet cannot in any way salvage the unjustified warrantless search. We hold that the State failed to prove its claimed exigency and protective-sweep justifications for the search of the hole in the closet.

## III. CONCLUSION

**{34}** We reverse the district court's denial of Defendant's motion to suppress, and we remand this matter to the district court.

**{35}** **IT IS SO ORDERED**.

---

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

---

**CYNTHIA A. FRY, Judge**

---

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Sublet*, Docket No. 28,819**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |

11

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-EC | Exigent Circumstances |
| CA-MR | Motion to Suppress |
| CA-SZ | Search and Seizure |
| CA-WA | Warrantless Arrest |
| CA-WS | Warrantless Search |