IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-035

Filing Date: August 30, 2012

Docket No. 32,976

STATE OF NEW MEXICO,

  Plaintiff-Petitioner,

v.

GUNNAR OLSON,

  Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Neil C. Candelaria, District Judge

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jacqueline L. Cooper, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Respondent

OPINION

DANIELS, Justice.

{1} We granted certiorari to review a Court of Appeals opinion that overturned the district court's denial of a motion to suppress drug evidence discovered during a traffic stop of Defendant Gunnar Olson. *See State v. Olson*, 2011-NMCA-056, ¶¶ 1-2, 5-6, 150 N.M. 348, 258 P.3d 1140. We hold that the arresting officer had reasonable suspicion to expand the scope of the valid traffic stop to an investigation of prostitution solicitation and that Defendant's subsequent consent to a protective search of his fanny pack was not a fruit of

a prior unlawful search or seizure. Accordingly, we reverse the Court of Appeals and affirm the district court's denial of Defendant's motion to suppress.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

**{2}**   The relevant facts were established at a suppression hearing. On the night of December 1, 2007, an officer of the Albuquerque Police Department was parked in an alley behind a convenience store near the intersection of University and Central. While filling out paperwork in his car, the officer saw Defendant drive into the alley, appear to recognize the marked police vehicle, immediately back out of the alley, and continue driving in his previous direction of travel on University Boulevard. Because Defendant's behavior made the officer suspicious (Defendant "kind of [gave] me the impression like, oh, no, the police"), the officer followed Defendant. When he saw that the temporary tags on Defendant's vehicle were expired, he conducted a traffic stop.

**{3}**   As the officer approached the driver's side of Defendant's car, he noticed Defendant rummaging for paperwork in the glove box and avoiding eye contact with the officer. The officer then recognized the passenger in the front seat of Defendant's car as a known transvestite prostitute he had encountered previously. Based on the passenger's clothing and heavy makeup, the officer thought it was "pretty obvious" the passenger was currently working as a prostitute. The officer had previously observed prostitutes on Central Avenue in the area where he saw Defendant pulling into the alley.

**{4}**   The officer then asked Defendant to step out of the car. He explained that separating the driver from the passenger is his routine practice when investigating solicitation of prostitution because it allows him to ask the parties how they know each other and what business they have with each other without either party interrupting or answering for the other.

**{5}**   The officer then asked Defendant if he was armed or in possession of anything illegal, and Defendant responded that he did not believe in violence. When the officer noticed that Defendant was holding a fanny pack, he asked Defendant to place the fanny pack on the hood of the patrol car as a personal safety precaution. The officer then asked Defendant for his driver's license, and Defendant reached for his fanny pack. When the officer stopped him and asked if he could look in the fanny pack to make sure no weapons were inside, Defendant told the officer he could.

**{6}**   In the course of inspecting the fanny pack, the officer discovered three crack pipes in a compartment near the back. He asked Defendant about the pipes, and Defendant admitted he used them to smoke cocaine. The officer then arrested Defendant for possession of drug paraphernalia, handcuffed him, and asked him where his cocaine was. Defendant admitted it was in a container in his right front pocket. The officer then took a small film case from Defendant's pocket that contained five crack rocks that later tested positive for cocaine.

**{7}** Defendant moved to suppress the evidence in the district court, arguing that the officer lacked reasonable suspicion to expand the traffic stop into a prostitution investigation, in violation of protections against unreasonable search and seizure under Article II, Section 10 of the New Mexico Constitution and under the Fourth and Fourteenth Amendments to the United States Constitution. After holding a suppression hearing at which Defendant did not testify, the district court denied Defendant's motion, and Defendant subsequently agreed to a no contest plea for the possession of a controlled substance, reserving the right to appeal the denial of his suppression motion.

**{8}** On appeal, the Court of Appeals reversed, holding that the officer did not have sufficient reasonable suspicion to expand the scope of the traffic stop into an investigation of prostitution solicitation, that Defendant's consent to the search and the evidence discovered in that search were therefore tainted, and that the district court erred in not granting Defendant's motion to suppress. *See Olson*, 2011-NMCA-056, ¶¶ 17-18. We granted the State's petition for writ of certiorari to review the Court of Appeals opinion.

## II. DISCUSSION

### A. Standard of Review

**{9}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. First, a reviewing court looks "for substantial evidence to support the trial court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of a search or seizure." *State v. Sewell*, 2009-NMSC-033, ¶ 12, 146 N.M. 428, 211 P.3d 885.

### B. Reasonable Suspicion Analysis

**{10}** Article II, Section 10 of the New Mexico Constitution guarantees that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." This Court has interpreted these protections more expansively than the similar protection provided by the Fourth Amendment to the U.S. Constitution. *See Leyva*, 2011-NMSC-009, ¶¶ 1-3 ("Because Article II, Section 10 provides greater protections against unreasonable searches and seizures than does the Fourth Amendment, we maintain the *Duran* standard for reviewing searches and seizures under the New Mexico Constitution."); *see also State v. Gomez*, 1997-NMSC-006, ¶ 24, 122 N.M. 777, 932 P.2d 1 ("There is established New Mexico law interpreting Article II, Section 10 more expansively than the Fourth Amendment."). Accordingly, even though Defendant has preserved both claims, we need only to address the broader protections under Article II, Section 10 of the New Mexico Constitution. *See Leyva*, 2011-NMSC-009, ¶ 1 ("In order to receive greater protections that may be conferred by the state constitution, however, a

criminal defendant must properly preserve his or her state constitutional argument.").

**{11}** An automobile stop and the attendant detention of its occupants is a "seizure." *See State v. Duran*, 2005-NMSC-034, ¶¶ 22-23, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by Leyva*, 2011-NMSC-009, ¶ 17. In *Duran*, this Court recognized the two-part test from *Terry v. Ohio*, 392 U.S. 1, 20 (1968) in determining the reasonableness of an expanded traffic stop under our state's constitutional protections, "'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Duran*, 2005-NMSC-034, ¶ 23. *See also Leyva*, 2011-NMSC-009, ¶¶ 3, 28 (upholding *Duran* as the appropriate inquiry for evaluating permissible officer questioning during traffic stops under Article II, Section 10 of the New Mexico Constitution). Under *Duran*, an officer may ask questions unrelated to the traffic stop so long as those questions are "supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter." *Levya*, 2011-NMSC-009, ¶ 55.

**{12}** Defendant concedes that the initial traffic stop meets the first requirement of *Duran* because the officer lawfully stopped Defendant for driving with expired registration. *See* NMSA 1978, § 66-3-18(B)-(C) (2007) (prohibiting driving with an invalid vehicle registration displayed). We agree. *See State v. Vandenburg*, 2003-NMSC-030, ¶ 21, 134 N.M. 566, 81 P.3d 19 (recognizing that the arresting officer "reasonably suspected that [the defendant] had violated a traffic law, and therefore, [the officer] was entitled to stop [the defendant's] car"). But Defendant argues that the officer impermissibly expanded the scope of the traffic stop when he investigated Defendant for solicitation of prostitution and that the search of the fanny pack was the fruit of the solicitation investigation. *See State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 17, 130 N.M. 386, 25 P.3d 225 ("The exclusionary rule requires suppression of the fruits of searches and seizures conducted in violation of the New Mexico Constitution.")

**{13}** Under the second requirement of *Duran*, "[a]n officer may expand the scope of the search or seizure during the investigatory stop only where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot." 2005-NMSC-034, ¶ 23 (internal quotation marks and citation omitted). Determining whether reasonable suspicion exists "is a fact-specific inquiry that does not lend itself to bright-line rules." *Id.* "[R]easonable suspicion is a commonsense, nontechnical conception[], which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 (second alteration in original) (internal quotation marks and citation omitted). A "reasonable suspicion determination requires us to assess the totality of the circumstances and precludes . . . [a] divide-and-conquer analysis in which we view each individual factor or circumstance in a vacuum." *State v. Neal*, 2007-NMSC-043, ¶ 28, 142 N.M. 176, 164 P.3d 57 (alteration and omission in original) (internal quotation marks and citation omitted). Additionally, this Court defers to "the training and experience of the officer when determining whether particularized and objective indicia of

4

criminal activity existed." *Leyva*, 2011-NMSC-009, ¶ 23 (internal quotation marks and citation omitted).

**{14}**    In this case, the Court of Appeals agreed with Defendant's argument that the officer lacked reasonable suspicion to investigate prostitution solicitation because the officer's actions were based "on the mere presence of a passenger known to have committed a past criminal act." *See Olson*, 2011-NMCA-056, ¶ 17 ("The only circumstances possibly giving rise to suspicion of solicitation of a prostitute before the officer began his immediate inquiry relating to solicitation of prostitution were the officer's having seen Defendant's vehicle pull into and then out of an alley at 12:30 a.m., after which, upon stopping the vehicle for a traffic violation, the officer saw the passenger, a person he knew was a transvestite prostitute."). In support, Defendant relies on *State v. Jones*, 114 N.M. 147, 151, 835 P.2d 863, 867 (Ct. App. 1992) (holding that mere association with a known gang member does not amount to reasonable suspicion because the officers had "nothing connecting this individual defendant to a particular crime or crimes, except the likelihood that he was a gang member"), and *State v. Affsprung*, 2004-NMCA-038, ¶¶ 2-4, 20-21, 135 N.M. 306, 87 P.3d 1088 (holding unlawful an officer's request for a passenger's identification during a traffic stop when there was no reasonable suspicion that the passenger was engaged in criminal activity). *See Olson*, 2011-NMCA-056, ¶ 17.

**{15}**    Unlike *Jones*, the officer in this case did not expand his investigation into solicitation of prostitution merely because Defendant was associating with someone known to have a criminal past. And unlike *Affsprung*, the officer did not detain Defendant merely because he appeared to be associating with a known prostitute. Instead, the officer articulated several specific reasons why he thought Defendant was actively engaged in soliciting his passenger for prostitution. First, the events occurred late at night and in an area of Albuquerque where the officer had previously seen prostitutes at work. Second, the officer testified that Defendant, after pulling into an alley and then seeing the officer's marked police car, immediately backed out of the alley and drove away on his previous course, an unusual maneuver for anyone using an alley to cross over to another street or to turn around. Third, when the officer pulled Defendant over for his expired tag, Defendant avoided eye contact. Fourth, the officer specifically recognized Defendant's passenger as a known prostitute and, because of the passenger's clothing and heavy make-up, suspected that the passenger was currently at work as a prostitute. Viewing all of these facts together supports the officer's reasonable suspicion that Defendant was turning into an alleyway late at night in an area known for prostitution in order to engage his passenger's services in violation of NMSA 1978, Section 30-9-3(B) (1989) (criminalizing the patronizing of a prostitute). While we share the Court of Appeals' concerns that police officers should not be allowed to arbitrarily stop and harass individuals merely because the individuals may associate with known criminals, this case does not present those circumstances. The officer was required to have reasonable suspicion for expanding the traffic stop into an investigation of prostitution solicitation, and the record supports the district court's finding that the expansion was justified by reasonable suspicion.

**{16}** Defendant also argues that the officer's ordering him out of his car for the prostitution investigation was unlawful because (1) this Court has yet to explicitly adopt *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (holding that an officer's order to step out of a car during a traffic stop is a permissible de minimis intrusion that is justified by the need for officer safety), and (2) the officer did not order Defendant out of the car based on safety concerns. *See Ketelson*, 2011-NMSC-023, ¶¶ 19, 27 ("We conclude that removing Defendant's firearm from the vehicle in order to ensure that it was beyond the reach of any of the occupants during the stop was a reasonable and minimal intrusion, which does not outweigh legitimate concerns of officer safety."). Defendant overlooks that the officer was not merely ordering him out of his car for the traffic stop. Instead, the officer testified that he ordered Defendant out of the car in order to investigate the parties separately for possible solicitation of prostitution, which we have already concluded was supported by reasonable suspicion. The broadened investigatory detention of Defendant in order to affirm or quell the officer's reasonable suspicions of criminal activity was permissible. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("We recognize an officer may detain a person in order to investigate possible criminal activity. Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." (internal quotation marks and citations omitted)); *see also State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 ("A police officer cannot forcibly stop an individual for purposes of investigation [without reasonable suspicion] that criminal activity may be afoot." (internal quotation marks and citation omitted)). Because existing New Mexico precedent determines the issue of the officer ordering Defendant out of the car, we need not address whether *Mimms* should be adopted.

**{17}** Defendant also argues that the seizure and search of his fanny pack were unlawful because the officer failed to articulate that Defendant posed a danger, relying on *State v. Cobbs*, 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct. App. 1985) (reviewing whether an officer had reasonable suspicion to conduct a protective frisk). Defendant's reliance on *Cobbs* is misplaced.

**{18}** *Cobbs* addresses the reasonableness of a nonconsensual protective search. *See id.* at 630, 711 P.2d at 907 ("In order, however, to conduct a frisk of a person suspected of engaging in a nonviolent offense, . . . additional articulable facts of potential danger must be present, as well as the suspicion of criminal activity."). In this case, the officer never conducted a protective search. Instead, he obtained Defendant's consent to look into the fanny pack. Accordingly, *Cobbs* is not on point. When a person voluntarily consents to a search, it is lawful regardless of whether the officer had constitutional justification to conduct an unwarranted search. *See State v. Duffy*, 1998-NMSC-014, ¶ 72, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110.

**{19}** "Whether consent was voluntarily given is a factual question, and the trial court's determination will not be disturbed on appeal unless it is not supported by substantial evidence." *State v. Paul T.*, 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74.

6

**{20}**     The uncontradicted evidence before the district court came from the officer who testified that, after Defendant started to retrieve his license from his fanny pack, "I asked him if [I] could take a look to make sure there is no weapon in the fanny pack before he started grabbing things out of it for my safety because at this point in time I still don't know if he could possibly have a gun or knives or any kind of edge weapon in that fanny pack. And he told me I could." On cross-examination, when defense counsel asked the officer if he would "have considered [his] request an order," the officer answered, "No." There was no other significant evidence on the voluntariness of Defendant's consent. The court reviewed the evidence and made specific findings from the bench "that the consent was knowingly and voluntarily and intelligently made" and that "nothing [in the evidence established that] Defendant was coerced or threatened in any way."

**{21}**     The district court's findings were supported by substantial evidence in the record before us. *See State v. Flores*, 2008-NMCA-074, ¶¶ 3, 17, 144 N.M. 217, 185 P.3d 1067 (upholding a judge's finding of voluntary consent where an officer testified he knocked on the defendant's door and obtained his permission to search his house for drugs); *State v. Fairres*, 2003-NMCA-152, ¶¶ 2, 12, 134 N.M. 668, 81 P.3d 611 (upholding a finding of no duress or coercion where an officer testified that the defendant consented to a warrantless search of his wallet); *State v. Chapman*, 1999-NMCA-106, ¶ 20, 127 N.M. 721, 986 P.2d 1122 (upholding a finding of consent where the uncontradicted testimony of an officer was that the defendant had consented to the search of a bag in the trunk of a car during a traffic stop); *State v. Goss*, 111 N.M. 530, 534-35, 807 P.2d 228, 232-33 (Ct. App. 1991) (holding that even though "the contested evidence was subject to conflicting interpretations and inferences, the trial court as the fact finder was empowered to weigh the evidence" and find that voluntary consent was given to search a vehicle stopped at a roadblock). We therefore affirm the district court's determination that Defendant voluntarily consented to the search of his fanny pack.

### III.     CONCLUSION

**{22}**     We hold that (1) the officer had reasonable suspicion to expand the initial traffic stop to investigate prostitution solicitation and (2) the subsequent consensual search of Defendant's fanny pack was not the fruit of any prior unlawful search or seizure. Accordingly, we reverse the Court of Appeals and affirm the district court's denial of Defendant's motion to suppress.

**{23}     IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____

7

**PETRA JIMENEZ MAES, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Olson_, No. 32,976**

**APPEAL AND ERROR**
Fundamental Error
Harmless Error
Prejudicial Error
Standard of Review

**CONSTITUTIONAL LAW**
Fourth Amendment
Suppression of Evidence

**CRIMINAL LAW**
Controlled Substances
Motor Vehicle Violations

**CRIMINAL PROCEDURE**
Consent
Motion to Suppress
Reasonable Suspicion
Search and Seizure