This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36606**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROBERT R. SAUCEDA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**     Defendant appeals his conviction for possession of a controlled substance. Defendant challenges the district court's order denying his motion to suppress the evidence discovered during his traffic stop. He contends: (1) the traffic stop was not supported by reasonable suspicion; (2) the deputy lacked sufficient basis for a protective frisk; (3) the officer exceeded the permissible scope of a protective frisk; and (4) the record and findings do not support application of the inevitable discovery rule. Defendant also challenges the district court's order denying his motion for a directed

verdict on the charge of failure to stop or yield. For the reasons set forth below, we affirm.

**DISCUSSION**

**{2}** "The district court's denial of [a d]efendant's motion to suppress evidence presents a mixed question of fact and law." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. "This Court reviews factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo." *Id.*

**1.      Reasonable Suspicion of Traffic Violations Justified the Stop**

**{3}** An officer may lawfully stop a vehicle to investigate a traffic violation where the officer has reasonable, articulable suspicion that the driver is breaking or has broken a traffic law. *State v. Goodman*, 2017-NMCA-010, ¶ 6, 389 P.3d 311. In the present case, Deputy Mosley testified that he observed Defendant fail to come to a complete stop at a stop sign and fail to use a turn signal when he turned left at an intersection, which could have affected surrounding traffic. These actions constitute violations of the Traffic Code. *See* NMSA 1978, § 66-7-345(C) (2003) (requiring a driver to stop at specific locations by a stop sign); NMSA 1978, § 66-7-325(A) (1978) (requiring a driver to use the appropriate signal when turning a vehicle that may affect traffic). Deputy Mosley conducted a traffic stop of the vehicle Defendant was driving.

**{4}** Defendant argues that his traffic stop was not supported by reasonable suspicion because the recording of his stop on Deputy Mosley's dashcam, conflicts with Deputy Mosely's testimony regarding his estimated distance from the intersection where Defendant made a left-hand turn such that the dashcam recording cannot "clearly establish whether [his] turn signal was [on]" or whether he came to a stop or merely rolled through.

**{5}** To convince this Court of the conflict, Defendant printed in his brief: (1) a fuzzy, black-and-white, nighttime screen capture of the first frame of the dashcam video; (2) a daytime image of, purportedly, the identical location on the street, using a "Google Maps Measure Distance Tool"; and (3) a satellite, street-view image. Defendant asks us to take judicial notice of the geographical facts and distances depicted in the images, and contends that Deputy Mosley underestimated his distance from Defendant's vehicle by at least approximately 150 yards. Judicial notice is reserved for facts that are not subject to reasonable dispute. Rule 11-201(B)(2) NMRA.

**{6}** Defendant's argument asks us to reweigh the evidence and discredit the officer's testimony with documentary evidence. It is for the fact-finder, however, to resolve any conflict in the evidence and to determine where the weight and credibility lie. *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482. In addition, this Court will not form a superior assessment of the circumstances than the district court based on the images printed in Defendant's brief, either in fact or by law. In point of fact, there is

no indication these images and Defendant's calculation were presented to the district court for its assessment. Additionally, the fuzzy screen shot Defendant printed bears little resemblance to the dashcam video or circumstances seen and experienced in real time, where vehicles move and their distance narrows. Thus, we decline to take judicial notice of the facts the images purport to demonstrate. Further, we will not independently reweigh the documentary and testimonial evidence on appeal. *See State v. Martinez*, 2018-NMSC-007, ¶ 14, 410 P.3d 186. Where both a dashcam video and officer testimony are presented, as it was here and in *Martinez*, the Supreme Court instructs that we must avoid evaluating documentary evidence in isolation and review the totality of the circumstances, deferring to findings supported by the evidence, including the testimony, and indulging in all reasonable presumptions in support of the district court's ruling. *Id.* ¶¶ 12, 14.

**{7}** The district court in the current case found that Deputy Mosley observed Defendant failing to use his turn signal and failing to come to a complete stop. This finding is supported by the officer's testimony. And whether Defendant properly stopped at the intersection is, like in *Martinez*, neither conclusively established nor "squarely contradict[ed]" by the documentary evidence. *See id.* ¶ 17 (concluding that where the documentary evidence did not indisputably contradict the officer's testimony, the appellate court should "defer to the district court's factual findings, so long as those finding are supported by evidence in the record" (internal quotation marks and citation omitted)). In addition, as the State points out, the dashcam video appears to show the lights on Defendant's vehicle remained constant throughout the turn, indicating Defendant's turn signal was not engaged. Viewing the evidence in the light most favorable to the district court's ruling, we hold the evidence was sufficient to support the district court's determination that the officer had reasonable suspicion to stop Defendant for violating the traffic laws. *See id.* ¶ 18.

## 2. Reasonable Suspicion to Expand the Traffic Stop.

**{8}** After asking for and receiving Defendant's driver's license and proof of insurance, Deputy Mosely told Defendant that he could smell a faint odor of alcohol coming out of the vehicle and inquired if Defendant or his passenger had been drinking alcohol. Defendant responded that he had not been drinking alcohol. Deputy Mosely waked back to his patrol vehicle to run Defendant's license. While doing so, Deputy Mosely learned that Defendant had "some violent felony charges on his record." Deputy Mosely walked back to Defendant's vehicle where he and Defendant briefly discussed the turning signals on Defendant's vehicle. Deputy Mosely then asked Defendant for his driver's license and to speak with him outside of the vehicle. As Defendant opened his door to step out of his vehicle, Deputy Mosely asked Defendant if he had any weapons to which Defendant responded "No." Deputy Mosely then asked Defendant if he was sure he hadn't been drinking because as they were talking he could smell an odor of alcohol coming from Defendant's breath.

**{9}** The district court ruled that Deputy Mosley had reasonable suspicion to expand the scope of the traffic stop into a DWI investigation based on the "faint smell of alcohol

when Deputy Mosley first encountered Defendant" and the distinct smell of alcohol on Defendant's breath when Defendant turned directly toward Deputy Mosley as he was returning Defendant's documents. This evidence is not disputed and was sufficient to provide Deputy Mosley with a reasonable basis for expanding the stop in order to confirm or dispel his reasonable suspicion that Defendant had been driving while intoxicated. *See State v. Walters*, 1997-NMCA-013, ¶¶ 6, 26, 123 N.M. 88, 934 P.2d 282 (concluding that the odor of alcohol on the defendant provided the officer with reasonable suspicion to expand the scope of a traffic stop to investigate a possible DWI).

### 3. Sufficient Basis for the Weapons Question and Protective Frisk

**{10}** Defendant next contends that Deputy Mosley lacked a sufficient basis to ask him if he was in possession of weapons and to frisk him because Deputy Mosley did not point to any specific, particularized facts that he was armed and dangerous. Defendant emphasizes that Deputy Mosley's testimony and the dashcam video show that he gave the deputy no reasonable basis to be concerned for his safety.

**{11}** The standard for determining whether an individual poses a threat to an officer is an objective one and is based on the totality of the circumstances, not just a defendant's demeanor. *State v. Leyva*, 2011-NMSC-009, ¶ 25, 149 N.M. 435, 250 P.3d 861 (emphasizing the objective nature of the inquiry); *State v. Gutierrez*, 2008-NMCA-015, ¶ 14, 143 N.M. 522, 177 P.3d 1096 (explaining that the determination of whether there was reasonable suspicion to believe the defendant was armed and dangerous is "an objective standard that takes into account the totality of the circumstances and all information available to the officer" at that moment (internal quotation marks and citation omitted). The inquiry asks "whether a reasonable, well-trained officer would have made the judgment this officer made. If reasonable people might differ, we defer to the officer's good judgment." *State v. Vandenberg*, 2003-NMSC-030, ¶ 23, 134 N.M. 566, 81 P.3d 19 (omission, internal quotation marks, and citation omitted). On appeal, we assess the objective facts known to the officer and look at the totality of the circumstances and do so in the light most favorable to the district court's ruling. *See State v. Sublet*, 2011-NMCA-075, ¶¶ 2, 8, 150 N.M. 378, 258 P.3d 1170 (explaining that we summarize the evidence and view the totality of the circumstances in the light most favorable to the ruling rendered for the prevailing party).

**{12}** The district court ruled that "Deputy Mosley reasonably believed . . . [D]efendant might be armed and presently dangerous due to the fact that he was on probation and his criminal history, which Deputy Mosley learned from the routine checks at the traffic stop[.]" Deputy Mosley's testimony explained he was concerned that Defendant was lying about consuming alcohol because this deception showed an effort to avoid jail and suggested Defendant was waiting for an opportunity to get away. This fear could reasonably be heightened by the knowledge that Defendant was on probation for a violent crime, suggesting that Defendant had a lot to lose for getting caught for even just the technical violation of consuming alcohol and could pose a threat to the deputy's safety.

**{13}** Deputy Mosley's actions, as shown on the dashcam video, support these objective facts and the district court's ruling. It shows that once the deputy developed the strong suspicion that Defendant was lying and had consumed alcohol, and already had the knowledge Defendant was on probation for a violent crime, Deputy Mosley asked Defendant to exit the vehicle and immediately asked if Defendant had any weapons. After Deputy Mosley asked Defendant to breathe into the deputy's hands, Deputy Mosley smelled Defendant's breath and confirmed his suspicion that Defendant had been drinking. Deputy Mosley then asked Defendant again if he had any weapons and asked to pat him down, to which Defendant responded, "yeah, go ahead."

**{14}** Contrary to Defendant's claim that the deputy launched a fishing expedition with no actual concern for officer safety, our review of the dashcam video provides further objective support for an actual, articulable concern for officer safety. The dashcam video shows that Defendant was not a slight man, wore fairly baggy clothing that could conceal a weapon, and had a size advantage over the deputy. *Cf. State v. Paul T.*, 1999-NMSC-037, ¶ 14, 128 N.M. 360, 993 P.2d 74 (evaluating the circumstances objectively in light of the concern for officer safety, noting the officer's testimony that the child was nearly a foot shorter and a hundred pounds lighter than the officer and the officer's failure to recall the safety features of the patrol vehicle separating the front seats from the backseats, which together objectively suggested to the Court that the officer was not concerned the child would pose a danger). Also, throughout this interaction, Deputy Mosley treated Defendant delicately with a demeanor that was calm and cordial.

**{15}** Before assessing the sufficiency of these circumstances, we observe, in *State v. Olson*, our Supreme Court refused to apply case law involving a nonconsensual protective search because the defendant consented to a protective search of his fanny pack. 2012-NMSC-035, ¶¶ 17-18, 285 P.3d 1066. The Court stated, "When a person voluntarily consents to a search, it is lawful regardless of whether the officer had constitutional justification to conduct an unwarranted search." *Id.* ¶ 18. The dashcam video shows Defendant consented to a patdown; however, the district court made no findings relative to that consent.

**{16}** Nevertheless, even assuming Defendant's consent to the patdown does not obviate the need for the State to demonstrate a sufficient basis for the frisk in this case, the objective facts set forth above justify the deputy's actions to ensure officer safety once the deputy expanded the scope of the stop into a more intimate investigation into DWI. *See Vandenberg*, 2003-NMSC-030, ¶ 23 (explaining that "[t]he purpose of a frisk for weapons is to allow an officer to conduct an investigation without fear of violence"); *Paul T.*, 1999-NMSC-037, ¶ 16 (observing that "[t]he necessity of close proximity will itself provide the needed basis for a protective pat-down of the person"). The New Mexico Supreme Court has emphasized the dangers of traffic stops to officers and acknowledged that "even in routine traffic stops, police may adopt precautionary measures addressed to reasonable fears due to the inordinate risks police take when they approach vehicles with persons seated in them." *Vandenberg*, 2003-NMSC-030, ¶ 34 (omission, alterations, internal quotation marks, and citation omitted). Mindful of such

dangers, our Supreme Court stated, "[q]uestions asked for purposes of ensuring officer safety during a stop generally are proper because when these measures are not too intrusive, the government's strong interest in officer safety outweighs the motorist's interests." *Leyva*, 2011-NMSC-009, ¶ 26 (alteration, internal quotation marks, and citation omitted); *see id.* ¶ 25 (observing that in such Fourth Amendment inquiries, "the balance does not depend on whether the officer subjectively fears the motorist" (internal quotation marks and citation omitted)).

**{17}** We hold that Defendant's strong incentive to avoid punishment for drinking and driving, his probationary status for a violent crime, his relatively large build and baggy clothing that could conceal a weapon, and his demonstrated deception gave Deputy Mosley an objectively reasonable basis to believe Defendant may have been armed and dangerous. *See State v. Ketelson*, 2011-NMSC-023, ¶ 19, 150 N.M. 137, 257 P.3d 957 (explaining that "*Terry* does not require certainty on the part of the officer that a suspect is armed and dangerous in order to conduct a limited protective search; rather, it requires only that the suspect 'may' be armed and dangerous" (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968))). Further, on balance, the deputy's brief questions about Defendant's possession of weapons, his request to patdown Defendant, and the seemingly consensual patdown of Defendant were not too intrusive into Defendant's interests as to outweigh the government's strong interest in officer safety. *See Leyva*, 2011-NMSC-009, ¶ 26. We hold the district court did not err by denying Defendant's motion to suppress on this basis.

### 4.     Defendant Consented to the Search of His Pocket

**{18}** Defendant argues the deputy exceeded the permissible scope of the protective patdown by manipulating the unknown object in Defendant's pocket. Defendant argues that the district court apparently and wrongfully applied the plain-feel doctrine to permit Deputy Mosley to seize the packet of cocaine because the deputy manipulated the object and New Mexico has rejected the plain-feel doctrine.

**{19}** Contrary to Defendant's characterization of the district court's ruling, it expressly determined that "[d]uring the patdown search, Defendant gave Deputy Mosley consent to search his pockets, that consent was voluntary, and [led] to the discovery of cocaine." The district court's ruling is adequately supported by events in the dashcam video. The dashcam video shows that after Defendant gave consent for the patdown, Deputy Mosley quickly patted down Defendant for weapons and asked what was in his pockets. In response, Defendant began to empty his pockets. The deputy swept his hand down the right side of Defendant's pant leg, stopped at the lump—which he testified he already knew without a doubt was narcotics—and asked, "What's that there?" In a calm and friendly tone, the deputy asked, "Can I just empty your pocket?" Defendant responded, "Yeah." The deputy reached into Defendant's pocket, removed the item, and reached for Defendant's hands to place handcuffs around them.

**{20}** On appeal, Defendant does not argue that his consent to search his pocket was invalid and does not even acknowledge that he gave consent, despite the district court's

express ruling. Our review of the record shows that, even though Defendant did not remove the cocaine from his pocket himself, he voluntarily consented to Deputy Mosley's search of his pocket. Defendant's arguments on appeal do not suggest otherwise. As we stated above, in *Olson*, our Supreme Court held that "[w]hen a person voluntarily consents to a search, it is lawful regardless of whether the officer had constitutional justification to conduct an unwarranted search." 2012-NMSC-035, ¶ 18. Because Defendant consented to expansion of the patdown by separately giving Deputy Mosley valid consent to search his pocket, there is no need for us to address whether the deputy exceeded the scope of the patdown or whether he could seize the cocaine pursuant to the plain-feel doctrine, a potentially, independently applicable exception to the warrant requirement. *See, e.g.*, *State v. Leticia T.*, 2014-NMSC-020, ¶ 11, 329 P.3d 636 (listing independent exceptions to the warrant requirement); *see also State v. Johnson*, 2010-NMCA-045, ¶ 24, 148 N.M. 237, 233 P.3d 371 (explaining limitations of the plain-feel doctrine).

**{21}**   For the reasons stated above, we are not persuaded the district court erred by denying Defendant's motion to suppress the cocaine.

### 5.   Remaining Claims of Error

**{22}**   Defendant contends there is insufficient factual development for, and inadequate district court findings to support, application of the inevitable discovery doctrine. In light of our holding that the deputy's seizure of the cocaine was lawful on the grounds set forth above, there is no need for us to determine whether it could have been lawfully and independently seized under the inevitable discovery doctrine. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 (observing that "courts exercise judicial restraint by deciding cases on the narrowest possible grounds and avoid reaching unnecessary constitutional issues").

**{23}**   Lastly, Defendant contends that his motion for a directed verdict should have been granted at trial on the charge for failure to stop or yield at an intersection. The record shows the jury acquitted Defendant of this charge. Thus, no actual controversy motivates this issue and no relief can be provided on appeal. *See State v. Sergio B.*, 2002-NMCA-070, ¶ 9, 132 N.M. 375, 48 P.3d 764 ("An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief."). The matter, therefore, is moot, and we do not address it further. *See State v. Ordunez*, 2012-NMSC-024, ¶ 22, 283 P.3d 282 ("[I]t is not within the province of an appellate court to decide abstract, hypothetical or moot questions in cases wherein no actual relief can be afforded." (internal quotation marks and citation omitted)).

### CONCLUSION

**{24}**   For the reasons provided above, we hold the district court did not err by denying the motion to suppress and that his argument pertaining to his motion for directed verdict is moot. We therefore affirm Defendant's conviction.

**{25}** IT IS SO ORDERED.

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**M. MONICA ZAMORA, Judge**